# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1579

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| David Eugene Murphy, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 12, 2001

Filed: August 16, 2001

_____

Before MORRIS SHEPPARD ARNOLD and RICHARD S. ARNOLD, Circuit Judges, and TUNHEIM,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

David Murphy was convicted of possessing methamphetamine with the intent to distribute it, *see* 21 U.S.C. § 841(a)(1), based on a plastic bag of methamphetamine that the police found in his possession after they arrested him for providing false identification during a traffic stop. Mr. Murphy moved to suppress the drug evidence because, he maintained, he never would have been arrested, and the drugs would not

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

have been found, but for an unlawful traffic stop and an unlawful search of his wallet conducted by Captain James Wobschall of the Hampton Police Department. The district court[2] concluded that both the traffic stop and the search were valid.

On appeal, Mr. Murphy maintains that Captain Wobschall's search of his wallet was unlawful. He also argues, for the first time, that Captain Wobschall did not have a legally sufficient reason to perform a pat-down search of his person during the traffic stop. We disagree and affirm the judgment of the district court.

## I.

After Captain Wobschall stopped Mr. Murphy's vehicle, he asked for and received consent from Mr. Murphy to search it. At the same time, he informed Mr. Murphy that he was going to conduct a pat-down search of Mr. Murphy's person to ensure that Mr. Murphy did not have any weapons. This pat-down search allowed Captain Wobschall to find Mr. Murphy's wallet and discover his identity, a revelation that, in turn, provided the grounds for Mr. Murphy's arrest. Mr. Murphy now contends that the pat-down search was unlawful, and that any evidence found as a consequence of the search should have been suppressed. Because he failed to make this objection at trial, we review this matter for plain error. *See United States v. Brown*, 203 F.3d 557, 558 (8th Cir. 2000) (*per curiam*).

On plain-error review, we will reverse only if there is an error that is obvious and that affects a defendant's substantial rights. *See United States v. Campa-Fabela*, 210 F.3d 837, 840 (8th Cir. 2000), *cert. denied*, 121 S. Ct. 1739 (2001). In this case, we do not think that there was any error, plain or otherwise, with regard to the district court's decision to permit the use of evidence found subsequent to Captain Wobschall's pat-down search. The justification for a pat-down search is to ensure the safety of a

---

[2]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

law enforcement officer. *See United States v. Gray*, 213 F.3d 998, 1000 (8th Cir. 2000); *see also United States v. Thomas*, 249 F.3d 725, 729-30 (8th Cir. 2001). A pat-down search, therefore, is constitutional when a law enforcement officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

The facts found by the district court in this case were sufficient to give Captain Wobschall a legal basis for conducting a pat-down search. As the record indicates, when Captain Wobschall elected to conduct the pat-down search, it was 2:45 a.m., and he knew that he was dealing with a single male who was driving a vehicle that was registered in a woman's name; he also noticed that the vehicle was displaying an out-of-area license plate. By this time, furthermore, Mr. Murphy had asserted to Captain Wobschall that he did not possess a driver's license or any other proof of identification. Captain Wobschall therefore had no way to determine the identity of the person with whom he was dealing and whether Mr. Murphy was a criminal and might be dangerous. We think that these facts, taken collectively, amount to unusual conduct that allowed Captain Wobschall, with his 23 years of experience as a law enforcement officer, to conclude reasonably that Mr. Murphy might have been engaged in a crime and might pose a danger to a law enforcement officer's safety. *See United States v. Davis*, 202 F.3d 1060, 1063 (8th Cir. 2000), *cert. denied*, 121 S. Ct. 199 (2000). We thus reject Mr. Murphy's argument on this point.

## II.

While conducting the pat-down search, Captain Wobschall noticed a wallet in Mr. Murphy's back pants pocket. He asked Mr. Murphy about the wallet, and Mr. Murphy voluntarily showed it to him, stating that it contained only pictures and no document of identification. Captain Wobschall discerned what looked like a driver's license or identification card protruding from the wallet, however, and he seized the wallet for a search. Mr. Murphy maintains that this seizure was unconstitutional.

A law enforcement officer is permitted "to seize evidence without a warrant when the initial intrusion is lawful, the discovery of the evidence is inadvertent, and the incriminating nature of the evidence is immediately apparent," *United States v. Raines*, 243 F.3d 419, 422 (8th Cir. 2001), *cert. denied*, 121 S. Ct. 2231 (2001); *see also United States v. Weinbender*, 109 F.3d 1327, 1330 (8th Cir. 1997). Because Mr. Murphy voluntarily showed his wallet to Captain Wobschall, he cannot, and does not, argue that Captain Wobschall's discovery of his driver's license was the result of an unlawful intrusion or that the discovery was deliberate. Mr. Murphy contends instead that the fact that his driver's license was visibly protruding from his wallet was not sufficiently incriminating to warrant Captain Wobschall's seizure.

We disagree and think that the driver's license, visible from a glance at Mr. Murphy's wallet, was, in the context of this case, sufficiently incriminating to allow Captain Wobschall to seize it. To satisfy the "immediately apparent" standard, *Raines*, 243 F.3d at 422, it is not necessary that a law enforcement officer know with certainty that an item is contraband or evidence of a crime. *See United States v. Garner*, 907 F.2d 60, 62 (8th Cir. 1990), *cert. denied*, 498 U.S. 1068 (1991). Rather, all that is required is " 'probable cause to associate the property with criminal activity,' " *Texas v. Brown*, 460 U.S. 730, 741-42 (1983) (plurality opinion), quoting *Payton v. New York*, 445 U.S. 573, 587 (1980).

In this case, seeing Mr. Murphy's driver's license in the wallet would have immediately alerted Captain Wobschall to the possibility that criminal activity was occurring, because at the beginning of the traffic stop Mr. Murphy told Captain Wobschall that he did not have a driver's license or any other form of identification on his person. Upon noticing that Mr. Murphy did in fact possess a driver's license, it was immediately apparent to Captain Wobschall that Mr. Murphy had violated Iowa Code § 321.174.3 by not displaying his driver's license to the police. Captain Wobschall also could have had probable cause to believe that, based on " 'the facts available to a reasonably cautious man,' " *United States v. Hatten*, 68 F.3d 257,

261 (8th Cir. 1995), *cert. denied*, 516 U.S. 1150 (1996), quoting *Garner*, 907 F.2d at 62, Mr. Murphy was violating Iowa Code § 718.6.3 by providing the police with false information about his identity. Our conclusion is buttressed by the fact that Captain Wobschall was a veteran law enforcement officer with extensive experience in recognizing criminal acts. *See Garner*, 907 F.2d at 62. We therefore hold that Captain Wobschall had an adequate reason to seize Mr. Murphy's wallet.

## III.

For the reasons indicated, we affirm the judgment of the district court.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.