# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3342

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Jerome W. Tate, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: January 15, 2002

Filed: April 1, 2002

_____

Before WOLLMAN,[1] Chief Judge, HANSEN, Circuit Judge, and OBERDORFER,[2] District Judge.

_____

PER CURIAM.

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

Jerome Tate appeals from the district court's[3] denial of his motion to suppress evidence. We affirm.

**I.**

Shortly before noon on January 24, 2001, a car driven by Tate was observed traveling 89 miles per hour in a 70 mile per hour zone on Interstate Highway 70 by Missouri State Highway Patrol Trooper Bradley Ream, who began pursuit. Tate was passing another car in the left lane when Ream caught up with him, but then suddenly exited the interstate. Ream succeeded stopping Tate shortly after this maneuver. Ream then approached the car and requested identification from Tate, who produced a valid California driver's license. Ream observed a passenger lying in the back seat of the car. Ream told Tate that he had stopped him for speeding and because he had observed that Tate was not wearing a seat belt. He then told Tate that he was going to issue tickets for both violations and requested that Tate exit his vehicle and be seated in the patrol car.

In response to Ream's questions, Tate stated that he and his passenger had borrowed the car from a friend. He refused to tell Ream where they had come from, and he claimed that he did not know their destination because he was supposed to call for directions when he arrived in St. Louis. He said that the passenger "was a kid from the neighborhood" and that the two were just out for something to eat. Additionally, Tate told Ream that he had no guns, knives, stolen property, or drugs on his person or in the vehicle.

After speaking with Tate for approximately five to seven minutes, Ream called another trooper for assistance. Trooper Hank Ehler arrived five minutes later and,

[3]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

after speaking with Ream, began to question the passenger. The passenger identified himself as Steven Johnson, told Ehler that Tate was his uncle, and stated they were going to St. Louis to visit another uncle. He was unable to identify whether Tate was related to his mother or father, however, and did not know the address of the uncle in St. Louis. Approximately fifteen minutes after Ehler arrived, Trooper Michael Halford joined them. Halford got a similar story from Tate, but Johnson refused to speak with him. Tate also gave Ehler a similar version of his story. After exchanging information and noting the inconsistencies in the stories given to them by Tate and his passenger, the troopers suspected that the two men were smuggling drugs.

Ream then rejoined Tate in the patrol car and again asked him if he had guns, knives, drugs, or stolen property, to which Tate replied that he did not. Ream then asked Tate for permission to search his vehicle, which Tate gave. Ream asked Tate to exit the patrol car and explained that he would first perform a pat-down search for weapons. Tate voluntarily emptied his pockets. While performing the pat-down, Ream discovered a bulge in the waistline of Tate's pants and recovered a loaded Ruger P94 semi-automatic .40-caliber pistol. Ream then placed Tate under arrest.

A federal grand jury subsequently indicted Tate for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court denied Tate's motion to suppress, adopting the magistrate judge's[4] proposed findings that the pat-down search of Tate did not violate the Fourth Amendment. Tate thereafter entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. See Fed. R. Crim. P. 11(a)(2). The district court sentenced Tate to 60 months' imprisonment, followed by three years of supervised release.

---

[4]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

## II.

Tate contends that his motion to suppress should have been granted because reasonable suspicion did not exist for the pat-down search of his person. In reviewing a denial of a motion to suppress, we review the district court's factual findings for clear error and review de novo the question whether reasonable suspicion existed to justify the warrantless search. Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Sanders, 196 F.3d 910, 912 (8th Cir. 1999).

Tate rightly does not contend that the initial stop of his vehicle was unconstitutional. "[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator." United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996) (citing United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995)). Ream had probable cause to stop Tate for speeding because he was traveling nineteen miles per hour over the posted speed limit. See United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) (citing United States v. Pipes, 125 F.3d 638, 640 (8th Cir. 1997)). The question is whether the totality of the circumstances provided the troopers with reasonable suspicion to expand the scope of the investigation to include the warrantless pat-down search of Tate. United States v. Arvizu, 122 S. Ct. 744, 750-52 (2002) (reaffirming that reviewing courts examine the "totality of the circumstances" to determine if the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing).

The Fourth Amendment prohibits "unreasonable searches and seizures" by government officials. U.S. Const. amend. IV. The Supreme Court has extended this protection to searches conducted during "brief investigatory stops of persons or vehicles that fall short of traditional arrest." Arvizu, 122 S. Ct. at 750 (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)). "A law-enforcement officer is . . . justified in making a limited, warrantless search for the protection of himself or others nearby in order to discover weapons if he has a reasonable, articulable suspicion that the person may

-4-

be armed and presently dangerous." United States v. Roggeman, 279 F.3d 573, 577 (8th Cir. 2002) (citing Terry, 392 U.S. at 30). The process of looking at the totality of the circumstances in determining whether the officer had a particularized and objective basis for suspecting legal wrongdoing "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Arvizu, 122 S. Ct. at 750-51 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)). Because "the concept of reasonable suspicion is somewhat abstract . . . [the Court] has deliberately avoided reducing it to a 'neat set of legal rules.'" Id. at 751 (quoting Ornelas v. United States, 517 U.S. 690, 695-96 (1996) (other citation omitted)).

We conclude that the circumstances giving rise to the stop and the facts developed during the post-stop interrogation of Tate and his passenger, taken in combination with Ream's training and experience, were sufficient to establish reasonable suspicion justifying the pat-down search. Tate engaged in evasive driving maneuvers in response to Ream's attempt to pull the car over. Tate and his passenger gave sharply conflicting accounts of their purpose in traveling. Tate professed a lack of knowledge of his final destination. Given the conflicting stories, and Tate's less-than-credible assertion that he did not know the destination of their noontime drive, Ream reasonably suspected that Tate and his passenger were involved in criminal activity. Thus, it was reasonable for Ream to conduct a pat-down search in order to ensure his safety and the safety of others. "A pat-down search . . . is constitutional when a law enforcement officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous.'" United States v. Murphy, 261 F.3d 741, 743 (8th Cir. 2001) (quoting Terry, 392 U.S. at 30).

The judgment is affirmed.

A true copy.

      Attest:

           CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.