**Timothy LAWYER and Michael Lawyer, Plaintiffs,**

v.

**CITY OF COUNCIL BLUFFS, IOWA, John Clark, and Dan Newby, Defendants.**

**No. CIV.1:01–CV–30013.**

United States District Court, S.D. Iowa, Western Division.

Nov. 20, 2002.

Alfredo G. Parrish, Matt Oetker, Parrish Kruidenier Moss Dunn Boles Gribble & Cook LLP, Des Moines, IA, for Plaintiffs.

Michael A. Sciortino, Council Bluffs, IA, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WALTERS, Chief United States Magistrate Judge.

This matter is before the Court on defendants' Amended Motion for Judgment on the Pleadings/Summary Judgment (# 22), following hearing. The motion is properly considered solely as one for summary judgment. Plaintiffs Timothy Lawyer and Michael Lawyer filed their Complaint on March 22, 2001. They bring seven causes of action: federal civil rights claims under 42 U.S.C. § 1983 for excessive force in making an arrest (Count I) and for unreasonable search (Count II) in violation of their rights under the Fourth Amendment to the U.S. Constitution, and state law claims for negligence per se (Count III), negligence (Count IV), assault and battery (Count V), intentional infliction of emotional distress (Count VI), and false arrest (Count VII). Though the Complaint does not expressly allege a Fourth Amendment violation based on arrest without probable cause, the parties have briefed the issue. The Court considers the issue presented by implied consent and treats it as if raised in the Complaint. Fed.R.Civ.P. 15(b).

Federal question jurisdiction is asserted. 28 U.S.C. §§ 1331 and 1343(a)(3). The Court has supplemental jurisdiction of the state law claims. 28 U.S.C. § 1367. The

case was referred to the undersigned for all further proceedings on August 9, 2001 pursuant to 28 U.S.C. § 636(c).

## I.

■ Defendants' motion for summary judgment is subject to the following well-established standards. A party is entitled to summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Mohr v. Dustrol*, 306 F.3d 636, 639 (8th Cir.2002); *Knudsen v. United States*, 254 F.3d 747, 750 (8th Cir.2001)(citing Fed.R.Civ.P. 56(c)); *accord Bailey v. USPS*, 208 F.3d 652, 654 (8th Cir.2000). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A genuine issue of fact is material if it "might affect the outcome of the suit under governing law." *Hartnagel*, 953 F.2d at 395 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir.1999).

In assessing a motion for summary judgment a court must determine whether a fair-minded trier of fact could reasonably find for the nonmoving party based on the evidence presented. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1030 (8th Cir.2000). The court must view the facts in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences which can be drawn from them. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *accord Dixon v. Lowery*, 302 F.3d 857, 865 (8th Cir. 2002); *Lambert v. City of Dumas*, 187 F.3d 931, 934 (8th Cir.1999); *Kopp v. Samaritan Health System, Inc.*, 13 F.3d 264, 269 (8th Cir.1993).

## II.

There is not much dispute about what occurred. This is so for two reasons. First, the traffic stop in question was video taped, with audio, by video cameras in the police vehicles. Second, defendant Clark's police report of the incident, which by affidavit he swears is true and correct, is not controverted by affidavit or otherwise. (Def.App. at 7–10).

This case involves a stop for a traffic violation in the City of Council Bluffs, Iowa, involving two Council Bluffs' police officers, defendants John Clark and Dan Newby, and plaintiffs Michael Lawyer, then age 17, and his 21–year–old brother Timothy Lawyer.[1] At the time in question, the Lawyers, residents of Wisconsin, were returning from a ski trip in Colorado.

On March 26, 1999, at approximately 2:15 a.m. defendant Clark was parked in the center median of Interstate 80, which runs through the City of Council Bluffs, Iowa, checking traffic speeds with a laser unit. (Def.App. at 8). The posted speed limit is 55 miles per hour. At approximately 2:24 a.m. Clark obtained a speed reading of 85 mph on an eastbound vehicle driven by Michael Lawyer and owned by the Lawyers' father. Timothy Lawyer was in the passenger seat. Clark stopped the vehicle, which pulled to the right shoulder off the road. (*Id.*) The events of the stop were captured on the video unit in Clark's patrol car. The audio component

---

1. For ease of reference, the Court will refer to the plaintiffs as "Michael" and "Timothy" and to defendants as "Clark" and "Newby."

of the tape is not completely discernible nor are all actions on film completely clear due to the distance between the vehicles. (Ex. A).

Clark approached the passenger side of the vehicle (away from traffic), and asked to see Michael's license, registration and proof of insurance. Clark explained he had stopped the plaintiffs for speeding. As Timothy opened the glove box to find the requested information, he withdrew and unzipped a red pouch to look inside. With his flashlight Clark saw "a small multi-colored object that I identified as a marijuana pipe." (Def.App. at 8). Clark asked what was in the bag he had seen, commenting that it looked like drug paraphernalia, and asked to take a look at it. Timothy responded by "quickly" zipping up the bag, and putting it back in the glove box. He refused Clark's request to look inside the bag. Clark renewed his request to see inside the bag several times. Timothy would not allow Clark to see the bag. Clark asked Timothy to step out of the vehicle several times. Timothy refused to comply with this request also. Clark told Timothy he would use pepper spray if Timothy did not exit the car. Timothy then opened the car door. He reached into the glove box, took out the bag, unzipped it and dumped what turned out to be an "Altoids" container and candy into his lap. After briefly discussing the red pouch issue and the purpose of the Lawyers' trip, Clark repeated his request to see proof of insurance and registration. The Lawyers did not have proof of insurance with them. Clark accepted the Lawyers' explanation that the car belonged to their father. Clark returned to his patrol car to write a speeding ticket for Michael.

Officer Newby arrived on the scene (Clark had radioed for backup while he was engaged with Timothy's refusal to allow inspection of the red pouch) and the officers conferred about the circumstances.

Newby stayed at the scene. Clark wrote the speeding citation and placed his citation book on the hood of his car behind plaintiffs' vehicle. He then approached the driver's side of plaintiffs' vehicle and said to Michael: "Mike, why don't you come back and sign this and we'll get you out of here." (Def. Stmt. of Facts ¶ 2; Pltf. Response ¶ 25). Michael refused to go to Clark's patrol car and asked Clark to bring the citation to him. The videotape indicates some discussion within plaintiffs' vehicle concerning Clark's request that Michael come back to the patrol car. Clark told plaintiffs it was his normal practice to have everyone come back to the sign the citation on the front of his patrol car so that he could videotape the person for identification. (See also Def.App. at 9). Clark repeatedly instructed Michael to come back to Clark's vehicle to sign the ticket to no avail. Michael complained, variously, that it was cold out (Clark told him to put a coat on), about the traffic (it was by then about 2:45 a.m. and the patrol car's flashing lights were operating), and he was afraid because Clark had threatened to pepper spray Timothy (Clark's demeanor at this point was neither hostile nor threatening).

Clark explained, or attempted to explain several times to plaintiffs that Michael's continued refusal to come back and sign the ticket would result in Michael's arrest. Clark repeatedly asked Michael and Timothy to "listen to me" but was interrupted by both. Clark wrote in his report:

> I then tried to explain again about Mike getting arrested. All I could ever get out was, "Understand" before being interrupted. I said, "Understand" seven times before I gave up. This was because Tim was now interrupting me, telling Mike not to sign the ticket. I told Tim to stay out of it because he was now interfering with a police officer. Mike then told me that he didn't want to

sign the ticket and that he didn't want to get out of the car.

(Def.App. at 9). Clark requested and received authority to make a juvenile's arrest for refusal to sign the citation.

Clark informed Michael he was under arrest and told him to step out of the car. Clark tried the door handle and it was locked. He told plaintiffs to unlock the doors no less than nine times. (Def. Stmt. of Facts ¶ 35; Pltf. Response ¶ 35). The driver side window was open. Clark reached inside to release the door lock. The driver's window started to go up. Newby grabbed the window to prevent it from closing the last few inches and yelled to Michael he would break it. Clark grabbed his pepper spray, and as Newby held the window, sprayed pepper spray inside the vehicle at Michael. (Def.App. at 9–10). Michael turned and a burst of spray hit Timothy in the face. (*Id.* at 10).

When he was sprayed with the pepper spray, Michael revved the engine. The car was not in gear. After further commands to get out of the car, Michael opened the door and Timothy got out the passenger side. Both were placed on the ground and handcuffed.

Michael and Timothy were put in Clark's patrol car. Clark took plaintiffs to a local hospital to have the pepper spray washed from their eyes, as Council Bluffs police policy required. On the way to the hospital Clark and the Lawyers discussed why Michael had refused to come back to the patrol car to sign the ticket. Michael said he was standing up for his rights and that the law did not require him to get out of the car to sign the ticket. (Def. Stmt. of Facts ¶ 47; Pltf. Response ¶ 47; Ex. A).

Michael was transported to the juvenile detention facility in Council Bluffs. Clark suggested, and his supervisor approved, that after processing Michael would be released to the custody of his brother, Timothy would be given a citation, and

they would be allowed to leave. Timothy was released upon signing a citation for "Inter w/official acts/Disobedience" in violation of Council Bluffs city ordinance. (Def. Supp.App. at 6–7; Second Supp.App. at 2). Clark drove plaintiffs to the tow lot to get their car.

An entry in the record indicates Timothy was adjudicated guilty of violating the ordinance requiring obedience to peace officers and fined. (Def. Supp.App. at 7). The accuracy of the record and how any determination of guilt came about are not clear. The disposition of Michael's speeding ticket is not shown in the summary judgment record.

### III.

The alleged actionable components of plaintiffs' interaction with defendants Clark and Newby during the incident are (1) the search of the red pouch; (2) the arrests of plaintiffs; and (3) the use of force, i.e., pepper spray, in making the arrests. It is appropriate to examine the federal § 1983 claims first followed by the state law claims.

### A. THE FEDERAL LAW CLAIMS

#### 1. *Qualified Immunity*

Clark and Newby raise the defense of qualified immunity. The Eighth Circuit has just recently again summarized the qualified immunity analysis:

... A state actor is entitled to qualified immunity when his " 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " [*Sexton v. Martin*, 210 F.3d 905, 909 (8th Cir.2000) ](quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To determine whether qualified immunity is appropriate, we first ask whether the plaintiff

alleges facts demonstrating that the state actor violated the plaintiff's constitutional or statutory rights. *See Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); *Washington v. Normandy Fire Prot. Dist.*, 272 F.3d 522, 526 (8th Cir.2001). In doing so at the summary judgment stage, we "take as true those facts asserted by [a] plaintiff that are properly supported in the record." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir.2001). If those facts would establish a constitutional violation if proven at trial, our next inquiry is whether the right violated was clearly established at the time of the state actor's conduct. *Washington*, 272 F.3d at 526. The law is clearly established if the law was sufficiently developed to give the official "fair warning" that his alleged conduct violated the plaintiff's rights. *Hope*, 536 U.S. at ——, 122 S.Ct. at 2516.

*Shade v. City of Farmington*, 309 F.3d 1054, 1057–58 (8th Cir.2002).

### 2. *The Search*

The basis for the traffic stop is not questioned. Michael Lawyer was speeding. Generally, when an officer makes a traffic stop

> ... The Fourth Amendment grants an officer conducting a routine traffic stop latitude to check the driver's identification and vehicle registration, ask the driver to step out of his vehicle and over to the patrol car, inquire into the driver's destination and purpose for the trip, and "undertake similar questioning of the vehicle's occupants to verify the information provided by the driver."

*United States v. Gregory*, 302 F.3d 805, 809 (8th Cir.2002)(quoting *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir.2002)).

 The scope by which an investigation following a traffic stop may be expanded beyond these initial actions is governed by a "reasonable suspicion"

standard. *Gregory*, 302 F.3d at 809 (quoting *United States v. Foley*, 206 F.3d 802, 806 (8th Cir.2000)). "Whether an officer had reasonable suspicion is a mixed question of law and fact...." *Gregory*, 302 F.3d at 809 (citing *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). "[R]easonable suspicion ... is determined by looking at 'the totality of the circumstances, in light of the officer's experience.'" *Linkous*, 285 F.3d at 720 (quoting *United States v. Dodson*, 109 F.3d 486, 488 (8th Cir.1997)). "[T]he officers must be acting on facts directly relating to the suspect or the suspect's conduct and not just on a 'hunch' or on circumstances which 'describe a very broad category of predominantly innocent travelers.'" *United States v. Beck*, 140 F.3d 1129, 1136 (8th Cir.1998)(quoting *Reid v. Georgia*, 448 U.S. 438, 440–41, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980)). For instance, " 'if the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions.'" *Gregory*, 302 F.3d at 809 (quoting *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir.1993)).

 When Timothy Lawyer looked in the glove box for the registration and insurance papers, he pulled out a red pouch which he opened. When he did so Clark, who was holding a flashlight, could see inside. Clark thought he saw drug paraphernalia. When Clark's flashlight illuminated the pouch Timothy promptly zipped it up and put it back in the glove box. When Clark asked Timothy what was in the bag, Timothy was not responsive. It was then Clark demanded to see what was in the pouch. Because Timothy refused consent to search and eventually dumped the contents of the pouch out only in response to Clark's orders and threatened use of force, the disclosure of the contents

was a search for Fourth Amendment purposes.

Clark's observation of what he believed to be drug paraphernalia, Timothy's apparent effort to hide the contents by promptly zipping the bag back up and putting it in the glove box, together with Timothy's avoidance of Clark's questions about the contents, gave Clark reasonable suspicion which warranted further investigation. That investigation consisted of a search of the pouch.

■ Passengers, like drivers, have a reduced expectation of privacy in an automobile. *Wyoming v. Houghton,* 526 U.S. 295, 303, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). Police officers with probable cause to search may inspect a passenger's belongings. *Id.* at 307, 119 S.Ct. 1297. "A law enforcement officer is permitted 'to seize evidence without a warrant when the initial intrusion is lawful, the discovery of the evidence is inadvertent, and the incriminating nature of the evidence is immediately apparent...'" *United States v. Murphy,* 261 F.3d 741, 743–44 (8th Cir.2001)(quoting *United States v. Raines,* 243 F.3d 419, 422 (8th Cir.), *cert. denied,* 532 U.S. 1073, 121 S.Ct. 2231, 150 L.Ed.2d 222 (2001)) "To satisfy the 'immediately apparent' standard, (citation omitted) it is not necessary that a law enforcement officer know with certainty that an item is contraband or evidence of a crime." *Murphy,* 261 F.3d at 744 (citing *United States v. Garner,* 907 F.2d 60, 62 (8th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 787, 112 L.Ed.2d 849 (1991)). "Rather, all that is required is ' "probable cause to associate the property with criminal activity." ' " *Murphy,* 261 F.3d at 744 (quoting *Texas v. Brown,* 460 U.S. 730, 741–42, 103 S.Ct.

1535, 75 L.Ed.2d 502 (1983), quoting in turn *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). *See United States v. Fladten,* 230 F.3d 1083, 1086 (8th Cir.2000)(where item commonly used in manufacturing methamphetamine was in plain view in back seat of automobile, probable cause to search existed); *United States v. Coleman,* 148 F.3d 897, 904 (8th Cir.), *cert. denied,* 525 U.S. 899, 119 S.Ct. 228, 142 L.Ed.2d 188 (1998)(where officer observed gun clip protruding from under passenger seat, limited "sweep" of passenger compartment was constitutional); *United States v. Richards,* 967 F.2d 1189, 1193 (8th Cir.1992)(where officer viewed .22 cartridges in plain view, limited search of passenger compartment constitutional).

■■ Clark's initial intrusion was lawful. He was entitled to ask the occupants of the vehicle to produce the car registration and proof of insurance. The discovery of the contents of the pouch was inadvertent. Clark saw the contents when Timothy opened the pouch. Clark thought he saw drug paraphernalia, which is associated with the possession and use of unlawful controlled substances. It turned out he was wrong, but the totality of circumstances gave Clark probable cause to associate the contents of the pouch with criminal activity. Accordingly, the undisputed facts in the summary judgment record do not establish a Fourth Amendment violation in connection with the search of the pouch. It follows a reasonable police officer in Clark's position would not have known his conduct in searching the pouch was violative of plaintiffs' Fourth Amendment right to be free of unreasonable searches.[2]

**2.** Plaintiffs also challenge Clark's demand that Timothy exit the vehicle after Timothy would not reveal the contents of the pouch. The fact is, Timothy did not get out of the car. The order that he do so is not independently

actionable. Beyond this, a police officer making a traffic stop may order passengers out of the vehicle pending completion of the stop. *Maryland v. Wilson,* 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *see United*

### 3. *The Arrests*

With respect to Michael, plaintiffs argue the arrest was for "failing to sign the citation, not for committing the public offense of speeding." (Pl. Brief in Resistance at 11). Failure to sign a citation is not a crime. On the videotape Clark told Michael he was being arrested for failing to sign the ticket for the speeding violation.

 The Fourth Amendment does not prohibit warrantless arrests for minor offenses, even where an officer has the option of issuing a citation in lieu of arrest. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). In Iowa a peace officer may make an arrest for a public offense committed in his or her presence, or where the offense has been committed and the officer has reasonable ground for believing the person to be arrested has committed it. Iowa Code § 804.7(1), (2). Iowa also statutorily permits police officers to issue citations in lieu of arrest, but does not require them to do so. Iowa Code 805.1(1); *see State v. Adams*, 554 N.W.2d 686, 690–91 (Iowa 1996). There is an exception, however, in the case of juveniles stopped for a traffic violation, and Michael Lawyer was a juvenile. A juvenile is to be issued a citation in lieu of arrest, Iowa Code § 805.16(1), provided, however, "[a] person under the age of eighteen who refuses to sign the citation without qualification, ... may be arrested in the manner provided in subsection 3." Iowa Code § 805.16(2). Subsection (3) (Iowa Code § 805.16(3)) in turn instructs that a juvenile so arrested "shall only be arrested for the limited purpose of holding the person in nonsecure custody in an area not intended for secure detention while awaiting transfer to an appropriate

juvenile facility or to court ... for contacting and release to the person's parents...." Thus, Iowa law expressly allows a police officer to arrest a juvenile for refusal to sign a traffic citation, though the public offense is the traffic violation. Clark could lawfully arrest Michael for refusing to sign the ticket.

 Plaintiffs point out that Michael said he would sign the citation, but he did not want to leave the vehicle to do so. Clark could lawfully direct Michael to exit the vehicle and come to the patrol car to sign the citation. *Gregory*, 302 F.3d at 809. Clark could reasonably have viewed Michael's refusal to sign except on his terms as a refusal "to sign the citation without qualification" authorizing Michael's arrest and transfer to a juvenile facility and eventual release to his parents as contemplated by statute.[3]

Clark had probable cause to believe Michael committed the misdemeanor public offense of speeding in his presence. *See* Iowa Code §§ 321.285 and .482. Even if Iowa Code § 805.16(2) were now to be interpreted to make Michael's refusal to sign the citation at the patrol car not a refusal to sign "without qualification," the facts there is no case law interpreting the statute and Michael's arrest was not inconsistent with its text give Clark, and by extension, Newby, qualified immunity from suit for the arrest. The law was not so clearly established that Clark had fair warning that his arrest of Michael in the circumstances violated Michael's constitutional rights. *See Gorra v. Hanson*, 880 F.2d 95, 98 (8th Cir.1989) (where law has not been judicially construed and officer's interpretation not inconsistent with common understanding, officer is entitled to qualified immunity.)

---

*States v. Beatty*, 170 F.3d 811, 813 (8th Cir. 1999); *Coleman*, 148 F.3d at 904.

**3.** Officer Newby assisted in making the arrest, but Clark made the decision to arrest both plaintiffs. Hence, the Court has focused on Clark's conduct.

 Plaintiffs also contest the probable cause for Timothy Lawyer's arrest. The picture here is more complicated. Timothy was cited for interference with official acts and disobedience of a police order, both in violation of Council Bluffs city ordinances, but apparently was prosecuted only for the latter. Since probable cause for either offense would justify Timothy's arrest, it is appropriate to examine both alleged violations. Before doing, so it bears note that an Iowa peace officer may make an arrest for the violation of an ordinance. Both ordinances were punishable as misdemeanors. (Def. Second Supp. App. at 3). A violation of a city ordinance carrying a penalty of a fine (Timothy was subject to fine) or imprisonment is a public offense for which a peace officer is authorized to make a warrantless arrest as provided in Iowa Code § 804.7. *See State v. Ceron*, 573 N.W.2d 587, 592 (Iowa 1997).

 Section 8.56.040 of the Council Bluffs city ordinances requires obedience to peace officers. "No person shall willfully fail or refuse to comply with any lawful order or direction of a peace officer." (Def. Second Supp.App. at 2). Clark attempted to explain to Michael that if he did not come back to the patrol car to sign the ticket he would be arrested. Clark's police report states Timothy interrupted his efforts to talk to Michael and told Michael not to sign the ticket. The video tape shows repeated interruptions by the occupants of the car with Clark's attempt to gain compliance with his directive to Michael to go to the patrol car to sign the ticket. It is not clear, however, either from Clark's police report or from the fluid interactions shown on the video tape that Timothy failed to obey any order or direction by Clark to stop interfering with his attempts to communicate with Michael. Probable cause for Timothy's arrest on the disobedience charge is therefore not demonstrated on this record.[4]

Section 8.56.045 penalizes interference with official acts. (Def. Second Supp.App. at 2). It does so in language nearly identical to that in its state statutory counterpart, Iowa Code § 719.1(1). "A person who knowingly resists or obstructs anyone known by the person to be a peace officer ... in the performance of any act which is within the scope of the lawful duty or authority of that officer ..." violates both the statute and ordinance. The crime is a general intent crime, the elements of

---

**4.** In their November 6, 2002 post-hearing brief plaintiffs raise a new issue in response to the post-hearing evidence (prompted by the Court's questions) that Timothy Lawyer was adjudicated guilty of failing to obey a peace officer in violation of § 8.56.040. Citing of *City of Houston, Texas v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), they argue any command by Clark to Timothy to cease criticizing Clark's conduct and to stop talking was unlawful as violative of Timothy's First Amendment right to challenge and criticize a police officer. *Id.* at 461–62, 107 S.Ct. 2502. As noted above, the Court agrees with plaintiff that on the state of this record, probable cause to arrest Timothy for a violation of the obedience ordinance is not demonstrated, hence it is not necessary to consider the lawfulness of the order. The Court notes, however, that while Timothy could not be arrested "merely for exercising his First Amendment rights," *Gainor v. Rogers*, 973 F.2d 1379, 1387 (8th Cir.1992), he could be arrested for obstructive conduct which accompanied his challenges to Clark. Clark's police report indicates Timothy's interruptions interfered with and ultimately led Clark to give up his attempts to communicate to Michael the consequences of his failure to sign the citation as directed. (Def.App. at 9). When a combination of acts, some of which give probable cause and some of which are protected, are present in a single incident an arrest may be made. *See Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1079–80 (8th Cir. 1990); *see also Goff v. Bise*, 173 F.3d 1068, 1076 (8th Cir.1999); *Habiger v. City of Fargo*, 80 F.3d 289, 297 (8th Cir.), *cert. denied*, 519 U.S. 1011, 117 S.Ct. 518, 136 L.Ed.2d 407 (1996) (a qualified immunity case).

which are (1) knowledge of the officer's status as a peace officer; (2) knowledge that the officer was acting within the scope of his lawful duty or authority; and (3) knowing resistance or obstruction of the officer in the performance of the act. *See State v. Buchanan,* 549 N.W.2d 291, 293 (Iowa 1996); Iowa Crim. Jury Inst.1910.1. "Resist" means "to oppose intentionally, interfere with or withstand" and "obstruct" means "to hinder intentionally, retard or delay." *Buchanan,* 549 N.W.2d at 293; Iowa Crim. Jury Inst.1910.2.

Plaintiffs rely heavily on an Iowa Court of Appeals opinion in which that court, quoting *State v. Donner,* 243 N.W.2d 850, 854 (Iowa 1976), said that "actual opposition to the officer through the use of actual or constructive force making it reasonably necessary for the officer to use force to carry out his duty" constitutes interference. *State v. Turk,* 595 N.W.2d 819, 822 (Iowa App.1999), *overruled on other grounds, State v. Maring,* 619 N.W.2d 393, 395 n. 1 (Iowa 2000) (per curiam). In *Donner* the Iowa Supreme Court held the word "resist" in a statutory predecessor to § 719.1 did not require a showing of "actual violence or direct force." The court continued "it is sufficient if the person charged engaged in actual opposition to the officer through the use of actual or constructive force making it reasonably necessary for the officer to use force to carry out his duty." 243 N.W.2d at 854. Moreover, *Donner* did not deal with the "obstruct" prong of interference. That term was not in the version of the statute before the *Donner* court. *Id.* at 853.

■ The Iowa Supreme Court has not held the use of actual or constructive force is an essential element of a violation. In *State v. Brecunier,* 564 N.W.2d 365, 369–70 (Iowa 1997), the Iowa Supreme Court upheld an interference with official acts con-

viction where the defendant shined a flashlight in the officer's eyes, hid a shot gun, and complained about a warrantless entry. The court observed Brecunier "was arrested—not for any exposition of ideas—but for actions that interfered with officers engaged in official acts." *Id.*

Timothy knew Clark was a peace officer, he was in uniform and driving a patrol car. Clark, in an effort to gain Michael's compliance, was attempting to explain to Michael that he would be arrested if he did not sign the citation as directed. There was probable cause to believe Timothy knew that Clark was acting within the scope of his duty and authority in doing so. Clark also had probable cause to believe that Timothy's conduct hindered his attempts to communicate to Michael the consequences of not coming to the patrol car to sign the ticket. The conduct was more than mere verbal harassment, which does not constitute resistance or obstruction. Iowa Code § 719.1(3). Clark therefore could have reasonably believed that Timothy obstructed, in the sense of intentionally hindering or delaying, his effort to issue the citation to Michael by explaining the consequences of Michael's refusal to comply with Clark's directions.

Timothy had a clearly established constitutional right not to be arrested except upon probable cause to believe that he had committed a public offense. It is evident Clark believed Timothy had committed the offense of interference with official acts and that was one reason for Timothy's arrest. Iowa case law did not clearly indicate otherwise and Timothy's conduct fell within the common understanding of the language employed in the statute. *See Gorra,* 880 F.2d at 98. Clark's arrest of Timothy did not violate any statutory or constitutional rights of which a reasonable person in his position would have known.[5]

5. Plaintiffs argue that Timothy's statements to his brother was conduct protected by Iowa

## 4. The Use of Force

Plaintiffs allege Clark and Newby used excessive force in arresting them. The force in question was the use of pepper spray as beyond this the force consisted of the routine police practice of placing plaintiffs on the ground and handcuffing them.

■ Excessive force claims are analyzed under the Fourth Amendment standard of "objective reasonableness." *Seiner v. Drenon*, 304 F.3d 810, 812 (8th Cir. 2002) (a shooting case).

> To decide whether a particular use of force is objectively reasonable, courts examine the facts and circumstances of each case, including the crime's severity, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect actively resists arrest or flees. (citation omitted). We consider only whether the seizure itself, .... and not preseizure conduct, was unreasonable.

*Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Iowa statutory and case law follow the same standard: "[a] peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer *reasonably believes* to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest." Iowa Code § 804.8 (emphasis by the Court); *see Chelf v. Civil Service Comm'n of City of Davenport*, 515 N.W.2d 353, 355 (Iowa App.1994) ("[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is wheth-

er the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."); *Johnson v. Civil Service Comm'n of City of Clinton*, 352 N.W.2d 252, 257–58 (Iowa 1984).

■ Here the crimes were not serious and neither Clark nor Newby could have felt their safety was threatened by plaintiffs. However, Michael was not compliant with the instructions of Clark and Newby after he was told he was under arrest. The officers could reasonably have believed Michael was resisting arrest. When Clark told Michael he was under arrest, he tried the driver's side door handle and it was locked. Clark and Newby told Michael to unlock the door at least nine times. (Def. Stmt. of Facts ¶ 35; Pltf. Response ¶ 35). Michael did not comply. Clark reached in the open window to release the door lock. Plaintiffs contend that as he did so he inadvertently caused the window to raise. There is no evidence of this, however, beyond the allegation in the Complaint.[6] Regardless of the cause, the window went up. Newby grabbed it to prevent it from closing and yelled to Michael he would break the window. Clark grabbed his pepper spray, got the nozzle in the open window and sprayed Michael. Michael turned to avoid the spray and Timothy was hit. Michael then revved the car engine which Clark took as an attempt to flee. Clark and Newby continued to tell plaintiffs to unlock the doors. They did so

---

Code § 804.20 which requires an officer "having custody of any person arrested or restrained ... after arrival at the place of detention ... to call, consult, and see a member of the person's family ...." The fallacy in this argument is that at the time Timothy was "communicating" with his brother, Michael was neither in custody nor in the place of detention.

**6.** An officer's mistaken understanding of the facts, if reasonable in the circumstances, can render a use of force reasonable. *Seiner*, 304 F.3d at 812 (quoting *Milstead v. Kibler*, 243 F.3d 157, 165 (4th Cir.), *cert. denied*, 534 U.S. 888, 122 S.Ct. 199, 151 L.Ed.2d 141 (2001)). That Clark may have caused the window to go up does not change the analysis of the excessive force issue.

and the arrest was completed. (Def.App. at 49).

■ The facts are not in dispute. It is doubtful that those facts satisfy the threshold inquiry of whether Clark's use of the pepper spray was objectively unreasonable and therefore violative of plaintiffs' Fourth Amendment rights. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). After being told of his arrest, Michael refused to come out of the car, refused to unlock the doors and, from Clark's perspective, attempted to roll up the open window. In the circumstances Clark's use of pepper spray was objectively reasonable in order to make the arrest. Even if objective reasonableness were in dispute, the second step in the qualified immunity analysis protects "officers from the sometimes 'hazy border between excessive and acceptable force' ... and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier,* 533 U.S. at 206, 121 S.Ct. 2151; *see Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) ("in the light of pre-existing law the unlawfulness must be apparent," quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The applicable law was not so clearly established as to have given Clark fair warning that his use of pepper spray to arrest Michael was unlawful. *Hope,* 536 U.S. at ——, 122 S.Ct. at 2516; *Shade,* 309 F.3d at 1057–58.

For the foregoing reasons plaintiffs have failed to make out a violation of their federal constitutional rights by defendants Clark and Newby in any particular alleged, or Clark and Newby have qualified immunity from suit for their conduct.

### 5. *Municipal Liability*

■ Plaintiffs' federal claims against the City are based on alleged municipal practices and policies, failure to train, or to supervise. *See Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. Dep't of Soc. Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Williams v. Davis,* 200 F.3d 538, 539 (8th Cir.2000); *Anderson v. Franklin Co., Mo.,* 192 F.3d 1125, 1131 (8th Cir.1999). As the record is insufficient to establish any of the § 1983 claims against Clark and Newby, the City of Council Bluffs is likewise entitled to summary judgment. *See Turpin v. County of Rock,* 262 F.3d 779, 784 (8th Cir.2001) (citing *Abbott v. City of Crocker,* 30 F.3d 994, 998 (8th Cir.1994)).

Moreover, the record is devoid of any evidence to support a claim against the City based on custom, policy or practice, or the failure to supervise or train Clark and Newby. Plaintiffs do not dispute this, but argue the reason is because defendants objected to an interrogatory asking for information about prior lawsuits involving claims of excessive force. Plaintiffs did not, however, file a motion to compel and it is now long past time to do so. *See* LR 37.1(c) (motions to compel must be filed within fourteen days after discovery deadline).

The motion for summary judgment will be granted with respect to the § 1983 claims against the defendant City.

### B. STATE LAW CLAIMS

#### 1. *Negligence Per Se and Negligence*

■ In Counts III and IV, plaintiffs plead, respectively, negligence per se and negligence. As plaintiffs' brief makes clear, both causes are based on a violation of Iowa Code § 804.8 in the use of force to effectuate plaintiffs' arrests. Section 804.8 authorizes force a peace officer "reasonably believes" is necessary to make an

arrest. As noted previously, the statutory standard is essentially the same as the federal Fourth Amendment objective reasonableness standard of *Graham v. Connor. Chelf,* 515 N.W.2d at 355. *see supra* at 953. The Court's conclusion above that the evidence is insufficient to demonstrate that the use of force by Clark and Newby was objectively unreasonable therefore requires that summary judgment be granted on the negligence claims.

## 2. *Assault and Battery*

Count V of the Complaint pleads assault and battery. Here also, plaintiffs rely on a violation of § 804.8 and for the same reasons just discussed, defendants are entitled to summary judgment. Further, a police officer is not liable for assault and battery in connection with a use of force he or she is statutorily authorized to employ. "Police officers are privileged to commit a battery pursuant to a lawful arrest" subject to the limitation on excessive force. 6 Am.Jur.2d *Assault and Battery* § 118 at 103; *see* Restatement (Second) of Torts § 132.

## 3. *Intentional Infliction of Emotional Distress*

Count VI pleads the tort of intentional infliction of emotional distress. Plaintiffs must prove "(1) outrageous conduct by the defendant; (2) the defendant's intentional causing, or reckless disregard of the probability of causing emotional distress; (3) plaintiff suffering extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Vinson v. Linn–Mar Comm. School Dist.,* 360 N.W.2d 108, 118 (Iowa 1984); *see Fuller v. Loc. Union No. 106 of United Bro. of*

*Carpenters,* 567 N.W.2d 419, 423 (Iowa 1997). "Before defendants' conduct can be considered outrageous it must be " 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " " *Fuller,* 567 N.W.2d at 423 (quoting *Harsha v. State Savings Bank,* 346 N.W.2d 791, 801 (Iowa 1984)).

The circumstances of this case as a matter of law are far short of demonstrating the requisite extremity, atrociousness or intolerableness. Moreover, a police officer's statutorily authorized use of force cannot fall outside the bounds of decency which constrain a civilized community because the community has authorized the conduct by legislation.

## 4. *False Arrest*

Finally, in Count VII plaintiffs allege false arrest. To establish this claim, plaintiffs must show "(1) detention or restraint against one's will and (2) unlawfulness of the detention or restraint." *Zohn v. Menard, Inc.,* 598 N.W.2d 323, 325 (Iowa App.1999) (quoting *Valadez v. City of Des Moines,* 324 N.W.2d 475, 477 (Iowa 1982), quoting in turn *Sergeant v. Watson Bros. Transportation Co.,* 244 Iowa 185, 196, 52 N.W.2d 86, 92 (1952)). As discussed in connection the § 1983 claims, plaintiffs' detention and restraint was not unlawful. Therefore, plaintiffs cannot establish the second element of false arrest.[7]

## IV.

Defendants have demonstrated there are no genuine issues of material fact and they are entitled to judgment as a matter of law on plaintiffs' federal and state law

7. In their motion and brief defendants raise in conclusory fashion as a defense to the state law claims the "due care" exception in Iowa's municipal tort liability statute. Iowa Code § 670.4(3). The defense has not been adequately briefed and in light of the Court's decision on the merits of the state law claims, it is not necessary to address the defense.

claims. Fed.R.Civ.P. 56(c). Defendants' motion for summary judgment is **granted**. The Clerk shall enter judgment dismissing the Complaint.

IT IS SO ORDERED.