# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3613

_____

United States of America,

                Appellee,

v.

Michael Steven Gregory,

                Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Eastern District of Arkansas.
\*
\*
\*

_____

Submitted: May 14, 2002

Filed: September 9, 2002

_____

Before BOWMAN, LOKEN, and BYE, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Michael Steven Gregory entered a conditional guilty plea to possession of cocaine base with intent to distribute, see 21 U.S.C. § 841(a)(1) (2000), after the District Court[1] denied his motion to suppress all evidence. Gregory and the passenger in the vehicle he was driving were arrested during a post-traffic stop investigation in the course of which an Arkansas State Police officer found cocaine, cocaine base ("crack" cocaine), and a loaded handgun in a suitcase in the vehicle's trunk. Gregory

_____

[1]The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

was sentenced to 180 months of imprisonment.  He now appeals the District Court's denial of his motion to suppress.  For the reasons stated below, we affirm.

## I.

On the morning of September 22, 2000, Gregory was driving with his girlfriend in a Toyota sedan on Interstate 40 between Fort Smith and Little Rock, Arkansas. The Toyota passed the parked patrol car of Corporal Bill Glover of the Arkansas State Police not long after sunrise.  Although the Toyota's headlights were on, the officer noticed that the rear license plate was not illuminated.  The State of Arkansas requires automobile lighting to be wired so that any lamp that serves to illuminate the rear license plate is on whenever the headlights are on.[2]  The officer could not read the Toyota's license plate, and he believed it was violating Arkansas law, so he decided to follow it.

At the suppression hearing before the District Court, the officer testified that when he caught up to the Toyota it was traveling approximately sixty miles an hour but was following just thirty to thirty-five feet behind a pickup truck.  Arkansas law forbids a driver from following too closely.[3]  The officer decided to pull the Toyota

---

[2]The applicable subsection of the Arkansas Code states:

> Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlamps or auxiliary driving lamps are lighted.

Ark. Code Ann. § 27-36-215(c)(2) (Michie Supp. 2001).

[3]The subsection of the Arkansas Code governing following too closely states:

> The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed

over for following too closely and because he believed it was violating Arkansas law governing rear license plate illumination.[4]

The Toyota pulled over to the side of the road, and Glover parked his patrol car behind it. As the officer approached the Toyota's driver's-side window, a pit-bull dog in the rear seat began barking at him. He therefore requested that the driver, Gregory, get out, step to the rear of the vehicle, and provide his driver's license. Gregory complied, but gave the officer a California identification card instead of a driver's license.[5] In response to the officer's queries, Gregory said the vehicle belonged to him and his wife, that he had left Las Vegas two days earlier, and that he would be visiting with friends in Little Rock for about a week.

The officer then walked around to the other side of the Toyota and asked the passenger in the front seat for her identification. She gave the officer a California identification card listing her name as Tishella Monique Browning. Browning then handed the officer a vehicle registration indicating that the vehicle belonged to Crystal Sexton, a resident of North Las Vegas. Browning told the officer that she and

---

of vehicles and the traffic upon and the condition of the highway.

Ark. Code Ann. § 27-51-305(a) (Michie Supp. 2001).

[4]The District Court found that Glover had a good faith belief that Gregory's Toyota was violating Arkansas law by not having its rear license plate illuminated, but the court also concluded that the officer was incorrect. As we explain more fully infra, determining whether this was in fact a traffic violation is not essential to our decision.

[5]Although the District Court noted that the question was not without some doubt, it found that even though Gregory did not have a driver's license in his possession, he was a validly licensed California driver on the date in question. The court also found that the officer verified this fact at some (undetermined) point during the traffic stop.

Gregory had departed from Los Angeles, not Las Vegas, and would be returning to California in a few days. The officer testified that Browning told him she did not know where they were going. According to Browning, however, she knew they were headed to Little Rock but could not then recall the city's name, so she told the officer they were headed to "Little" something in Arkansas. The officer questioned Gregory about the vehicle's ownership, and Gregory explained that Sexton was his wife but had not changed her surname when they married. This was true, but the officer did not believe Gregory. He also told the officer that Browning was his girlfriend.

The officer next checked Gregory's criminal history and learned that Gregory had been arrested for drug violations, assault, robbery, and homicide. The officer promptly contacted the Pope County Sheriff's Office to request backup assistance. In the meantime, he asked Gregory for permission to search the vehicle, but Gregory refused orally and in writing.

When backup assistance arrived, Glover asked Gregory and Browning to take their pit-bull dog and move to a spot approximately forty feet away from the Toyota. Glover removed his drug-sniffing dog, Crystal, from his patrol car and began scanning around the Toyota. Although Browning testified to the contrary, the District Court credited Glover's testimony that the dog alerted at both the passenger's door and the trunk. After placing his dog back in his patrol car, Glover retrieved the keys from the Toyota's ignition and opened the trunk. Gregory and Browning became greatly upset and quickly approached the officer with the pit-bull dog on a leash in front of them, stating, "You can't search my vehicle." The officer backed away from the Toyota, and Gregory slammed the trunk shut. He and Browning were then handcuffed, arrested, and transported to the Pope County jail. Glover eventually did search the trunk and found approximately 19.1 ounces of cocaine and cocaine base in zip-lock bags and a loaded .38 caliber pistol.

Gregory's first contention is that the officer lacked probable cause to effect the initial traffic stop, and thus violated the Fourth Amendment, because the Arkansas statute governing following too closely is unconstitutionally vague and because the officer was mistaken in his belief that the Toyota was violating the Arkansas statute governing the illumination of rear license plates. The District Court found that Gregory was following too closely, Gregory does not dispute this finding on appeal, and "a traffic violation—however minor—creates probable cause to stop the driver of a vehicle." United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993); accord United States v. Linkous, 285 F.3d 716, 719-20 (8th Cir. 2002); United States v. Beck, 140 F.3d 1129, 1133-34 (8th Cir. 1998) (concluding that an officer's observation of a motor vehicle following too closely behind another vehicle provided probable cause for a traffic stop). But Gregory argues that a violation of subsection 27-51-305(a) of the Arkansas code could not serve as probable cause for the traffic stop because this subsection is unconstitutionally vague. We do not address the constitutionality of the statute, for even if we were to find it unconstitutional, Gregory's argument would not prevail because the following-too-closely subsection was presumptively valid at the time the officer pulled Gregory over to enforce it. See Michigan v. DeFillippo, 443 U.S. 31, 40 (1979) ("The subsequently determined invalidity of the Detroit ordinance on vagueness grounds does not undermine the validity of the arrest made for violation of that ordinance, and the evidence discovered in the search of respondent should not have been suppressed."); United States v. Inocencio, 40 F.3d 716, 728 (5th Cir. 1994) (citing DeFillippo in the course of rejecting a driver's argument that an officer did not have probable cause to stop him because Texas's following-too-closely statute was unconstitutionally vague). Because we conclude that the officer's observation of Gregory following too closely provided probable cause to justify the traffic stop, we need not consider Gregory's argument that the Toyota did not violate Arkansas law on rear license plate illumination.

Gregory further contends that the officer lacked reasonable suspicion to expand his investigation and extend the detention. An officer conducting a traffic stop "may properly expand the scope of his investigation as reasonable suspicion dictates." United States v. Foley, 206 F.3d 802, 806 (8th Cir. 2000). Whether an officer had reasonable suspicion is a mixed question of law and fact, which we review de novo. See Ornelas v. United States, 517 U.S. 690, 696, 699 (1996). We review a district court's material findings of historical fact for clear error and "give due weight to inferences drawn from those facts" by the district court. Id. at 699.

The actions Glover took from the time he stopped the Toyota until he checked Gregory's criminal history were indisputably reasonable. The Fourth Amendment grants an officer conducting a routine traffic stop latitude to check the driver's identification and vehicle registration, ask the driver to step out of his vehicle and over to the patrol car, inquire into the driver's destination and purpose for the trip, and "undertake similar questioning of the vehicle's occupants to verify the information provided by the driver." Linkous, 285 F.3d at 719. This is precisely what Glover did.

Glover's next act was to check Gregory's criminal history. "[I]f the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions." Barahona, 990 F.2d at 416. Gregory told the officer he and Browning had left from Las Vegas; Browning said they had left from Los Angeles. Browning said they would be returning to Los Angeles in a couple days, while Gregory claimed they would be staying in Little Rock for about a week. Browning was unable to tell the officer exactly where they were headed. Although the Toyota displayed Nevada license plates and was registered to a Nevada resident, both occupants produced identification from California. Gregory offered no explanation why he was authorized to take a cross-country trip with his girlfriend in a vehicle belonging to his wife. The officer had no evidence other than Gregory's own statements to confirm that the vehicle actually belonged to Gregory's wife, and, moreover, the District Court

found that the officer did not believe Gregory's explanation. Further, the record indicates that the criminal history check took less than five minutes. While we do not imply that the Fourth Amendment requires an officer who conducts a routine traffic stop to have reasonable suspicion before running a criminal history check, in the circumstances presented here, it was certainly not unreasonable for Glover to extend the detention long enough to check Gregory's criminal history. See Foley, 206 F.3d at 806 (holding that the length of a post-traffic stop detention, which included a scan by a drug-sniffing dog, was not unconstitutionally unreasonable because the officer acted diligently to obtain information and investigate the suspicions which that information aroused).

Once backup assistance arrived, Glover conducted a scan of the vehicle with his drug-sniffing dog. The officer did not need to have probable cause or even reasonable suspicion to support this scan because "a dog sniff of the exterior of a vehicle is not a search." United States v. Morgan, 270 F.3d 625, 629 (8th Cir. 2001), petition for cert. filed, No. 01-10560 (U.S. May 28, 2002); accord United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647 (8th Cir. 1999), cert. denied, 528 U.S. 1161 (2000). Gregory nevertheless suggests that the scan was impermissible because it unreasonably extended the length of the detention and scope of the investigation. We have held that a brief drug scan at the end of a traffic stop does not require reasonable suspicion. $404,905.00 in U.S. Currency, 182 F.3d at 649; Linkous, 285 F.3d at 721 ("A short detention for a dog sniff after the completion of a traffic stop does not violate the Fourth Amendment."). Gregory did not present evidence that the dog sniff itself was unduly lengthy, and the record indicates that just over twenty minutes elapsed from the beginning of the traffic stop to the completion of the sniff.[6]

---

[6]Gregory's reliance upon our reasonable suspicion analysis in United States v. Beck, 140 F.3d 1129, 1136-40 (8th Cir. 1998), is unavailing because we have concluded that the dog sniff here did not require reasonable suspicion and because the facts here are distinguishable from the facts presented in Beck. See id. 1135-36

Gregory contends that Officer Glover lacked probable cause to search the Toyota even after the drug dog had scanned the vehicle. Gregory properly concedes that the positive indication of a reliable drug-sniffing dog is alone sufficient to provide probable cause for the search of a vehicle for controlled substances. Linkous, 285 F.3d at 721. Gregory argues, however, that Crystal's scan of his vehicle was flawed because the presence of Gregory's pit-bull dog distracted Crystal from her work. Gregory did not testify at the suppression hearing, but Browning testified that the officer had to hit Gregory's vehicle repeatedly in order to focus Crystal's attention upon it because the drug dog was preoccupied with Gregory's dog. Browning further testified that she did not see Crystal alert at the trunk or the passenger door. The officer testified without equivocation, however, that Crystal was completely unperturbed by Gregory's dog, in part because it was about forty feet away from the Toyota while Crystal was scanning it. He also stated unequivocally that Crystal alerted at the passenger door and at the trunk. The District Court obviously credited Glover's testimony, for it expressly found that Crystal had alerted twice. A finding such as this, which is based on a district court's credibility determination, is entitled to great deference on review, see Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985), and we cannot say that it is clearly erroneous, see Beck, 140 F.3d at 1133 (standard of review).

Gregory also contends that Crystal's reliability was not established and that the District Court clearly erred in finding her reliable. Although the District Court did not make an express finding on the question, in concluding that Crystal's alerts provided probable cause to justify the search of Gregory's vehicle, the court found by necessary implication that she was reliable. We review this finding of fact for clear

(concluding, *inter alia*, that an officer needed reasonable suspicion to extend a post-traffic stop detention because he had already concluded the portion of his investigation related to the traffic stop, had issued a warning, and had told the motorist that he was free to go); cf. United States v. Booker, 269 F.3d 930, 932 (8th Cir. 2001) (distinguishing Beck on similar grounds).

error.  See id.  Gregory suggests that Glover's unbounded discretion in filling out the reports required by the State of Arkansas to track Crystal's on-going training and performance, and the State of Arkansas's lack of standards or guidelines for the use of drug-sniffing dogs, render the District Court's finding erroneous.  Gregory's argument does not rely upon any affirmative evidence that he presented, but upon the doubts he attempted to create about Crystal's reliability during his cross-examination of Glover.  According to Glover's unrebutted testimony, however, Crystal is highly trained, has received satisfactory certification, and has performed her duties flawlessly.  She is certified by Professional Canine Services, a national, independent (non-governmental) organization.  Crystal successfully completed an Arkansas State Police canine handlers school at which another independent, non-governmental organization performed the grading, and she belongs to a national association for narcotic-detector dogs.  Glover daily records Crystal's performance in on-going training and actual drug detection and regularly submits his records to the Arkansas State Police.  Glover testified that Crystal had never given a false positive.[7]  The District Court found by implication that Crystal was a reliable drug-sniffing dog, and our review of the entire record fails to leave us "'with the definite and firm conviction that a mistake has been committed.'"  Anderson, 470 U.S. at 573 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

### III.

For the foregoing reasons, we affirm the District Court's denial of Gregory's motion to suppress.

---

[7]On a handful of occasions, Glover said, no drugs were found in a location to which Crystal alerted.  On each such occasion, however, Glover obtained other evidence that drugs had been in that location a short time before Crystal searched it.

-9-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.