Robert Eugene COLEMAN, Plaintiff,

v.

David G. RIECK, et al., Defendants.

No. 8:0CV293.

United States District Court,
D. Nebraska.

March 24, 2003.

Robert M. Schartz, Sodoro, Daly Law Firm, Omaha, NE, for plaintiff.

Frederick J. Coffman, Alan M. Thelan, Omaha, NE, for defendant.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

This matter is before the court on plaintiff's objection, Filing No. 131, to the report and recommendation of the magistrate, Filing No. 129. This is a 42 U.S.C. § 1983 action alleging violation of constitutional rights in connection with the traffic stop, pat-down search and subsequent arrest of plaintiff Robert Eugene Coleman on March 30, 1999.

Pursuant to 28 U.S.C. § 636, the court has conducted a de novo review of the magistrate's findings, including viewing the videotape that is the cornerstone of plaintiff's case. The court generally concurs in the magistrate judge's recitation of the events chronicled in the videotape, but disagrees with the magistrate's interpretation of the events shown on the videotape in several important respects. The court also disagrees with the conclusions that the magistrate judge draws from the events that are pictured on the videotape.

## I. Background

### A. Evidence

The videotape shows a traffic stop and ensuing struggle. Although the court generally agrees with the magistrate judge's recitation of events, the court makes several additional observations. The video opens with an officer approaching the driver's side window of the vehicle. The officer states that he doesn't "need one because you're a convicted felon." At that point, a man exits the car and the officer begins a pat-down search. A struggle, as described in the magistrate judge's findings and recommendations, follows. The events that transpire on the videotape are by no means clear. The struggle between the officers and Coleman occurs either in the car and hidden from view or is partially obscured by the car and by officers moving about.

The court's primary concern is the 53-second interval that shows several officers kicking Coleman. Coleman was shielded form view during this interval, and it is difficult to discern the moment when he was handcuffed. The court is unable to identify the officers administering the "kicks," except to note that a female officer identified in the videotape as "Shannon," and the male officer who initiated the traffic stop, were not among them. Accordingly, the court finds that a review of the videotape does not resolve all factual disputes.

Affidavits submitted in connection with the motions establish that Coleman was pulled over for failure to signal a turn. Affs. of Shannon Haney, attached to Filing No. 94, and David Rieck, attached to Filing No. 95. Evidence adduced by affidavit further shows that Haney used no force against Coleman other than helping to pull him out of the car. Aff. of Haney. Officer Rieck attempted to administer an LVNR[1] on Coleman, in response to Coleman's resistance to handcuffing, and later maced him. Aff. of Rieck. After Coleman was pulled from the car, he was face down on the ground. Aff. of Gregg Barrios, attached to Filing No. 94. Officer Barrios attempted to administer an LVNR on Coleman at that time. Aff. of Barrios. The struggle was already underway when Officer Martinez arrived at the scene. Aff. of Steve Martnez, attached to Filing No. 94. At that time Coleman had already been pulled from the car and was resisting arrest by putting his body in a "turtle

---

**1.** "LVNR" stands for "Lateral Vascular Neck Restraint." It is a defensive tactic approved by the Omaha Police Department. Filing No. 95, Ex. 1–B, Policy on Use of Deadly and Nondeadly Force.

position" curled up with his arms together to keep from being handcuffed. Affs. of Martinez and Gruidel, attached to Filing No. 94. Officers Martinez and Gruidel pulled on Coleman's shoulders and arms in an attempt to handcuff him, but used no other force against him. Affs. of Martinez and Gruidel.

Coleman, on the other hand, asserts in his affidavit that officer Rieck choked him. Aff. of Coleman, attached to Filing No. 46. He also states that a backup officer pulled him out of the car and kicked him over and over. Aff. of Coleman. He further asserts that he did not bite Officer Rieck. *Id.* In his complaint, Coleman identifies defendants Jerad Kruse and Louis J. Tomsu, IV, as the officers who administered kicks and knee strikes to him. This allegation is not controverted in any evidence submitted to the court and does not appear to be disputed.

**B. Procedural History**

As a result of the traffic stop at issue, Coleman was arrested for biting Officer David G. Rieck and for possessing narcotics. *Nebraska v. Coleman,* 10 Neb.App. 337, 630 N.W.2d 686, 690 (2001). Coleman was charged with third degree assault on an officer and possession of a controlled substance. *Id.* He moved to suppress the evidence obtained after the pat-down search, the motion was overruled, and the case proceeded to trial. *Id.* At trial, Coleman renewed the motion to suppress and objected to all evidence derived from the

allegedly unconstitutional search and seizure. *Id.* Coleman was convicted of assaulting an officer and possessing a controlled substance. *Id.*

Coleman raised the issue of unconstitutional search on appeal to the Nebraska Court of Appeals. *Id.* at 691. The Nebraska Court of Appeals found, under the Fourth Amendment to the Constitution and under article I, § 7 of the Nebraska Constitution, that "the pat down was an unreasonable and unlawful search." *Id.* at 696.

Coleman, acting pro se, filed this action for damages. Ultimately, counsel was appointed for him. Defendants move to dismiss the amended complaint or for summary judgment on the ground of qualified immunity.[2] Coleman also moves for partial summary judgment in his favor on the issue of the illegality of the pat-down search. On referral from this court, the magistrate judge found no constitutional violation with respect to the excessive force claim, found that the officers were entitled to qualified immunity, and recommended that the motions to dismiss and for summary judgment on that claim be granted. *See* Filing No. 129, Findings and Recommendation at 6. The magistrate judge also recommended denial of Coleman's motion for summary judgment, finding the officers were entitled to qualified immunity on that claim for the reason that the illegality of the pat-down search was not clearly established at the time of the incident. *Id.* at 8.

---

**2.** Specifically, defendant David G. Rieck moves to dismiss or strike, Filing No. 70, and for summary judgment, Filing No. 95.; defendants Haney, Tomsu, Martinez, Kruse, Gruidel, and Barrios move to dismiss or strike, Filing No. 75, and defendants Gruidel, Barrios, Martinez, and Haney also move for summary judgment, Filing No. 94. All of these motions involve the defense of qualified immunity.

Defendants City of Omaha and Carey also move to dismiss or strike, Filing No. 74. The court has bifurcated the issues of liability of the officers and municipal or vicarious liability. Filing No. 107. Discovery has been stayed pending resolution of the officers' liability. In light of today's ruling, the court finds the City's and defendant Carey's motion should be denied without prejudice to its reassertion after the underlying liability issues are resolved.

Plaintiff objects to the magistrate judge's recommendation. Plaintiff objects to all of the magistrate judge's findings except those that pertain to Count V (for punitive damages). The court finds the magistrate judge's recommendation should be adopted as to that claim.

## II. Discussion

### A. Qualified Immunity

 Qualified immunity shields governmental officials from personal liability if their actions, even if unlawful, were "nevertheless objectively reasonable in light of the clearly established law at the time of the events in question." *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The inquiry in determining whether the officers are entitled to qualified immunity focuses on whether the appellants have asserted a violation of a clearly established constitutional right and, if so, whether there are genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right. *Turpin v. the County of Rock,* 262 F.3d 779, 783 (8th Cir.2001). A court required to rule upon the qualified immunity issue must consider the threshold question of whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officers' conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If no constitutional right would have been violated even if the allegations were established, there is no necessity for further inquiries concerning qualified immunity. *Id.* The second inquiry, whether the right was clearly established at the time, must be undertaken in light of the specific context of the case, not as a broad general

proposition. *Id.* (noting "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.")

### B. Excessive Force

 In his first claim (Count I), Coleman alleges defendants used excessive force against him in effecting his arrest. Claims that law enforcement officers have used excessive force during an arrest or other seizure are analyzed under the Fourth Amendment and its "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).[3]

 To decide whether a particular use of force is objectively reasonable, courts examine the facts and circumstances of each case, including the crime's severity, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect actively resists arrest or flees. *Id.* at 396, 109 S.Ct. 1865; *Seiner v. Drenon,* 304 F.3d 810, 812 (8th Cir.2002). The proper perspective in judging an excessive force claim is that of "a reasonable officer on the scene" and "at the moment" force was employed. *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. The calculus of reasonableness must allow for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 396–97, 109 S.Ct. 1865. Moreover, it has long been recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat

---

3. The qualified immunity inquiry adds another dimension to a Fourth Amendment reasonableness analysis: even if a court should determine that the Fourth Amendment was violated, immunity can be granted to officers for reasonable mistakes as to the legality of their actions. *Saucier,* 533 U.S. at 205–06, 121 S.Ct. 2151.

thereof to effect it. *Saucier,* 533 U.S. at 208, 121 S.Ct. 2151. Whether an action is "reasonable" in the Fourth Amendment sense, can only be analyzed by weighing and balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. Although not every push or shove violates the Fourth Amendment, *Guite v. Wright,* 147 F.3d 747, 750 (8th Cir.1998), the use of gratuitous force against a helpless individual is unreasonable. *See, e.g., Phelps v. Coy,* 286 F.3d 295, 301 (6th Cir.2002) (noting "on the facts as we must take them, there was simply no governmental interest in continuing to beat [the plaintiff] after he had been neutralized, nor could a reasonable officer have thought there was"); *Fontana v. Haskin,* 262 F.3d 871, 880 (9th Cir.2001) (stating "[g]ratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment."); *Miller v. Smith,* 220 F.3d 491, 495 (7th Cir.2000) (finding allegations that officers smacked suspect around while he lay cuffed on the ground violate the Fourth Amendment); *Palmer v. Sanderson,* 9 F.3d 1433 (9th Cir.1993) (noting that jerking, pushing, and tightly handcuffing a 67–year–old man amounts to excessive force); *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir.1994) (stating use of force after suspect was incapacitated by Mace would amount to excessive force as a matter of law). The facts presented permit a finding that the kicks and knee strikes administered to Coleman after he was subdued were not only unnecessary, but would have been recognized as unnecessary by a reasonable officer in Officer Tomsu's or Officer Kruse's position.

 The inquiry does not end with this determination. The officers may still be entitled to qualified immunity if Coleman's rights were not clearly established at the time of the incident. The court must thus determine whether it would have been clear to a reasonable officer that his conduct was unlawful at the time and in the situation he confronted. *Saucier,* 533 U.S. at 201–02, 121 S.Ct. 2151. When various courts have determined that certain factually similar conduct is a constitutional violation, the constitutional right to be protected against such conduct is considered clearly established even if courts have not agreed upon a precise formulation of the violation. *Id.* at 203, 121 S.Ct. 2151. "The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Guite* at 750; *see also Wilson v. Spain,* 209 F.3d 713, 716 n. 3 (8th Cir.2000) (noting "the right to be free from excessive force in the context of an arrest has been clearly established for some time"). Similarly, the unconstitutionality of the use of gratuitous force against a suspect after he had been was subdued was well-established at least by 1991. *Adams v. Metiva,* 31 F.3d at 387.

The force used by officers while Coleman was actively resisting arrest may have been reasonable, but the court cannot find that any "reasonably competent officer" could have concluded that Officers Kruse and Tomsu were justified in kicking Coleman for fifty-three seconds as he lay on the ground. There is no governmental interest in continuing to exert force against a suspect after he has been subdued. Clearly the officers' violent acts were neither an attempt to subdue Coleman nor an effort to protect themselves. It seems likely to the court that the officers' acts were instead an attempt to obtain the evidence that Coleman had put in his mouth. The court can find no case law to support any such attempt to extricate the alleged contraband from Coleman's mouth by kicking him, however briefly. Whether motivated by an altruistic con-

cern for Coleman's health or by overzealous evidence-gathering, the Constitution does not sanction kicking a suspect until he turns over evidence. Accordingly, the court will not adopt the magistrate's recommendation to grant qualified immunity to defendants Kruse and Tomsu.

The court is also concerned with the application or attempted application of an LVNR and Mace, either separately or in combination, to Coleman. Officers Rieck and Barrios admit that they attempted such maneuvers. The Mace and LMPV incidents cannot be seen clearly on the videotape. The court finds there is a genuine issue of material fact with respect to whether the actions were warranted in the circumstances. Accordingly, the court will not adopt the recommendation of the magistrate judge to grant qualified immunity to the officers who applied or attempted to apply Mace or an LMPV to Coleman.

The court finds, however, that the remaining officers are entitled to qualified immunity on the excessive force claim. The evidence establishes that these officers either used no force or used necessary force in proportion to Coleman's resistance. The court finds that no reasonable jury could find that those officers used unreasonable force under the circumstances. Accordingly, the court adopts the magistrate judge's recommendation to dismiss the claims against the remaining defendant officers.

## C. Unreasonable Seizure

In his second claim (Count II), Coleman alleges that he was subjected to an illegal search. He argues that there was no reason for Officer Rieck to "pat him down," thus finding drugs and setting in motion the course of events that followed. Coleman and the defendant officers move for summary judgment on this claim. Defendant officers again assert qualified immunity. Coleman asserts that he is entitled to judgment by reason of the Nebraska Court of Appeals' finding that the search was illegal, contending that this court is bound by the Nebraska Court of Appeals' finding under the doctrine of collateral estoppel.

### 1. Coleman's Motion for Summary Judgment

 With respect to Coleman's motion for summary judgment, the court finds that Coleman cannot rely on "collateral estoppel" for the proposition that he is entitled to judgment in his favor. In Nebraska, if the following four factors apply, the issue is given full preclusive effect: the issue concluded must be identical, it must have been raised and litigated in the prior action, it must have been material and relevant to the disposition of the prior action, and the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. *W.F.M., Inc. v. Cherry Co.*, 279 F.3d 640, 643 (8th Cir.2002).[4] The issue resolved by the Nebraska Court of Appeals in *Coleman*, 630 N.W.2d at 696, that "an officer's knowledge that a suspect has an unspecified criminal history is not sufficient, by itself, to justify a pat-down search after a lawful traffic stop," is not identical to the issue this court must resolve regarding qualified immunity, which is whether the officers "could have reasonably believed their conduct was lawful in light of clearly established law and the information they possessed." *Kukla v. Hulm*, 310

---

4. The case of *Turpin v. County of Rock*, 262 F.3d at 782, cited by the magistrate judge, is inapposite. First, the holding is dicta. *Id.* (noting the court would not address the collateral estoppel issue). Second, the Eighth Circuit's statement deals with claim preclusion (formerly known as res judicata), as opposed to issue preclusion (formerly known as collateral estoppel).

F.3d 1046, 1048–49 (8th Cir.2002); *see also Saucier*, 533 U.S. at 205–06, 121 S.Ct. 2151 (noting reasonableness inquiries not coextensive). Thus, collateral estoppel does not furnish authority for a grant of judgment in favor of plaintiff.[5]

▉▉▉▉ A related issue is the amount of deference due the Nebraska Court of Appeals by this court. This court is bound by a Nebraska court's decision applying Nebraska law. *See, e.g., Lancaster v. American & Foreign Ins. Co.*, 272 F.3d 1059, 1062 (8th Cir.2001). The converse, however, is not true; federal courts are not bound by a state court's interpretation of federal law. *See Honeywell, Inc. v. Minnesota Life and Health Ins. Guar. Ass'n*, 110 F.3d 547, 551 (8th Cir.1997) (noting that federal courts accord respectful consideration and great weight to decisions of state courts, but cannot surrender duty to exercise their own judgment on federal questions). While " 'a State is free *as a matter of its own law* to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards,' " it may not impose such greater restrictions as a matter of federal constitutional law. *Arkansas v. Sullivan* 532 U.S. 769, 772, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001) (quoting *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975)). In *Coleman*, the Nebraska Court of Appeals construed and relied upon federal constitutional law. Accordingly, although we are not bound by the state court's decision, we agree with the court's analysis of the reasonableness of the seizure, but nevertheless find Coleman's motion should be de-

nied because, as discussed below, genuine issues of material fact exist with respect to the seizure.

**2. The Officers' Motion for Summary Judgment**

The Supreme Court has extended the Fourth Amendment's protection against "unreasonable searches and seizures" to searches conducted during "brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "A law-enforcement officer is … justified in making a limited, warrantless search for the protection of himself or others nearby in order to discover weapons if he has a reasonable, articulable suspicion that the person maybe armed and presently dangerous." *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir.2002). A police officer may pat down a detainee when the "officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Terry*, 392 U.S. at 24, 88 S.Ct. 1868. Thus, a pat-down search generally requires a reasonable suspicion that the suspect has a weapon. *United States v. Long*, 320 F.3d 795, 2003 WL at 346258, *4 (8th Cir. Feb.18, 2003).

▉▉▉▉ The level of suspicion necessary to constitute "reasonable suspicion," as justifies a protective pat-down search, is considerably less than proof of wrongdoing by a preponderance of the evidence, and is

**5.** Although collateral estoppel does not compel resolution of the ultimate outcome on the Fourth Amendment claim, Coleman can, however, rely on the doctrine to bar defendant officers from taking a position in this litigation contrary to the position taken in the state court action. The videotape of the stop confirms that Rieck relied on Coleman's

status as "2CX" in a computer check of Coleman's record as the reason to pat Coleman down. He further relied on that status alone as justification for the pat-down in proceedings in state court. In light of his representations to the Nebraska courts, Rieck is estopped from now claiming a different justification for the stop.

obviously less demanding than that for probable cause; nevertheless, the Fourth Amendment requires some minimal level of objective justification. *Roggeman*, 279 F.3d at 578. The determination of whether a protective pat-down search for weapons is supported by reasonable suspicion is a mixed question of law and fact. *Id.* Courts apply an objective test to resolve the question. *Id.* at 577. Because the "sole justification" for such a search is the protection of the officer and others, its scope must be confined to a search reasonably designed to discover concealed weapons. *Id.*

 The evidence can be viewed as contradicting or negating the officer's claim that a reasonable suspicion that Coleman had a weapon justified a protective pat-down. Officer Rieck can be heard to state on the videotape that he needed "no reason" because Coleman was a convicted felon. There is no evidence of any objective basis for Officer Rieck's belief that the "2CX" status meant Coleman was dangerous. There is no evidence that Coleman had been involved in violent or gun-related crimes. An officer's knowledge that a suspect has an unspecified criminal history is not sufficient, by itself, to justify a pat-down search. *United States v. Davis*, 94 F.3d 1465, 1469 (10th Cir.1996); *United States v. Jerez*, 108 F.3d 684, 693 (7th Cir.1997).

Notwithstanding the Nebraska Court of Appeals' assertion that Nebraska cases had not addressed the question of whether a pat-down was justified by felon-status alone, a number of other jurisdictions had addressed the issue as a matter of federal constitutional law several years before the incident at issue. *See Coleman*, 630 N.W.2d at 695–96; *Jerez*, 108 F.3d at 693. The conclusion reached by the Nebraska Court of Appeals in *Coleman* was a natural outgrowth of the Nebraska case law on the subject and had been intimated in earlier cases. *See Coleman*, 630 N.W.2d at 694 (noting "several general rules from factually similar cases help guide our analysis"). Accordingly, the court finds that Coleman's right to be free from the intrusion of a pat-down search solely because of his status as a felon was well-established as a matter of federal constitutional law the time of the incident.

 The facts are equally susceptible to a finding that the initial traffic stop—for failure to signal a turn—evolved into an investigatory stop at some point. There is no question that an officer at a traffic stop can check the driver's identification and vehicle registration, ask the driver to step out of his vehicle, and ask routine questions concerning the driver's destination and the purpose of his trip. *United States v. Gregory*, 302 F.3d 805, 809 (8th Cir.2002). An investigative stop can grow out of a traffic stop so long as the officer has reasonable suspicion to expand his investigation, even if his suspicions are unrelated to the traffic offense that served as the basis for the stop. *Long*, 320 F.3d 795, 800; *Gregory*, 302 F.3d at 809. The requirement of reasonable suspicion that criminal activity is afoot to justify a pat-down search has been well established since *Terry*, 392 U.S. 1, 88 S.Ct. 1868, in 1968.

If the pat-down were the result of an investigatory stop, the question would then become whether the totality of the circumstances provided the officer with reasonable suspicion *of criminal activity* to expand the scope of the investigation to include the warrantless pat-down search of Coleman. *Long*, 320 F.3d at 800 (emphasis added). The record is devoid of evidence that Officer Rieck had any reasonable suspicion of criminal activity, other than Coleman's felon status. The court's review of the record shows genuine issue of material fact with respect to whether

and when the traffic stop ended and an investigative stop began. The court thus finds that there are genuine issues of material fact on the reasonableness of the pat-down search that preclude summary judgment in favor of the Officer Rieck.

THEREFORE, IT IS ORDERED:

1. The findings and recommendation of the magistrate judge, Filing No. 129, are adopted in part and rejected in part as indicated in this memorandum and order.

2. The plaintiff's objections, Filing No. 131, to the magistrate judge's report and recommendation, Filing No. 129, are sustained in part and denied in part as indicated in this memorandum and order.

3. Plaintiff's claim for punitive damages is dismissed.

4. Defendants City of Omaha's and Carey's motion to dismiss or strike, Filing No. 74, is denied as stayed, without prejudice, to its reassertion following resolution of Coleman's claims against the individual officers.

5. Defendants' motions to dismiss, Filing No. 70 and Filing No. 75, are denied.

6. Coleman's motion for partial summary judgment, Filing No. 97, is denied.

7. Defendant Rieck's motion for summary judgment, Filing No. 95, is denied.

8. The motion for summary judgment of defendants Barrios, Martinez, Haney and Gruidel, Filing No. 94, is granted with respect to defendants Martinez, Gruidel and Haney, and denied with respect to defendant Barrios.

9. Defendants Martinez, Gruidel, and Haney are dismissed.

10. Defendants' motion for a protective order, Filing No. 109, is denied at this time without prejudice to its reassertion.

11. The objection to the magistrate's report and recommendation, Filing No. 133, and motion for oral arguments, Filing No. 137, which were filed by the plaintiff without benefit of his court-appointed attorney, are denied.

12. Plaintiff's motion for an extension of time in which to identify experts, Filing No. 122, is referred to the magistrate judge for consideration.