**UNITED STATES of America,
Plaintiff,**

v.

**Edwardo GAXIOLA, Defendant.**

No. CRIM.03–283.

United States District Court,
S.D. Iowa.

May 14, 2004.

Lawrence H. Hyman, Ralph E. Meczyk, Chicago, IL, for Defendant.

## ORDER

LONGSTAFF, Chief Judge.

The Court has before it defendant Edwardo Perez Gaxiola's motion to suppress, filed February 9, 2004. The government resisted the motion on February 18, 2004. The Court held an evidentiary hearing on April 23, 2004. The government submitted additional case law in a letter to the Court dated April 23, 2004, and defendant submitted a supplemental memorandum in a fax to the Court dated April 28, 2004.[1] The matter is now fully submitted.

## I. BACKGROUND

The Court finds the following facts to be true based on testimony and evidence presented during the hearing. At approximately 2 p.m. on October 26, 2003, Iowa State Trooper Jason Bardsley was traveling westbound on Interstate 80 when he saw a black BMW sport utility vehicle traveling eastbound without a front license plate. Trooper Bardsley turned around, caught up with the vehicle, and stopped it near the 21 mile marker. The vehicle contained two individuals and had a rear license plate from the State of California. After pulling the vehicle over, Trooper Bardsley approached the vehicle and asked defendant, who was in the driver's seat, for his license, registration and proof of insurance. Trooper Bardsley then advised defendant of the reason for the stop and explained to him that he would receive a warning citation for failure to display a front license plate. Trooper Bardsley then asked defendant to step back to the patrol car where he was placed in the passenger seat. While running a driver's license and criminal history check, Trooper Bardsley asked defendant where he and his passenger were going and the purpose of the trip. Defendant explained that he was driving from California to Chicago with his fiancee to announce their engagement to her parents.

At approximately five minutes into the stop, Trooper Bardsley told defendant to remain in the patrol car, and returned to check the passenger's identification. The passenger was identified as Rosangela Sandoval. Trooper Bardsley asked Ms. Sandoval for identification and inquired into where they were going and the purpose of the trip. Ms. Sandoval advised

---

1. The letter and fax were filed by the Court on April 27, 2004 and May 7, 2004 respectively.

Trooper Bardsley that they were going to visit her aunt in Chicago. Trooper Bardsley asked Ms. Sandoval if there was any special reason they were going to Chicago and she stated that there was none.

Trooper Bardsley returned to his patrol car and ran the identification information provided by Ms. Sandoval. While waiting for the information from his dispatch, Trooper Bardsley confirmed with defendant that they were traveling to Chicago to stay with Ms. Sandoval's parents. After the dispatcher called back with the requested information, Trooper Bardsley went back to the vehicle to return Ms. Sandoval's identification. While at the vehicle, Trooper Bardsley asked Ms. Sandoval where her parents lived and she responded that they lived in California.

Trooper Bardsley again went back to the patrol car, returned defendant's license, registration and proof of insurance, and went over the warning for failure to display a front license plate with defendant. Trooper Bardsley asked defendant if he had any questions regarding the stop and defendant stated that he did not. As defendant began to exit the patrol car, Trooper Bardsley asked defendant if he could ask him a few more questions and defendant agreed. Trooper Bardsley then asked defendant if he had any illegal narcotics or weapons in his vehicle, to which defendant responded no. At approximately 13 minutes into the stop, Trooper Bardsley asked defendant if he could have consent to search the vehicle. Defendant gave verbal consent. After defendant gave his verbal consent, Trooper Bardsley filled out and read to defendant a written consent to search form which defendant signed.

Trooper Bardsley then returned to the vehicle and asked Ms. Sandoval if there was anything illegal in the vehicle and she

responded no. Trooper Bardsley brought Ms. Sandoval back to the patrol car and placed her in the back seat.

At approximately sixteen and a half minutes into the stop, Trooper Bardsley began a search of the vehicle. Following the results of his brief search at the highway, Trooper Bardsley requested permission from defendant to have the vehicle moved from the highway for a more extensive search.[2] Defendant consented and the vehicle was towed to an Iowa State Patrol post. An ensuring search of the vehicle revealed what was later determined to be approximately 88 pounds of cocaine.

## II.  APPLICABLE LAW AND DISCUSSION

Defendant now moves to suppress evidence of the narcotics on the grounds that the officers obtained evidence in violation of his Fourth Amendment rights. Defendant argues that (1) Trooper Bardsley's questioning was not reasonably related to the circumstances that originally justified the stop—defendant's failure to display a front license plate; and (2) defendant's consent to search his vehicle was invalid because nothing intervened to breach the causal connection between the illegal detention and his consent.

### A.  Whether the Post–Stop Investigation Went Beyond the Scope the Stop

Defendant first contends that Trooper Bardsley unlawfully expanded the scope of traffic stop by repeatedly questioning defendant and Ms. Sandoval about the whereabouts of Ms. Sandoval's parents, and unlawfully detained defendant for over 20 minutes.

---

2. During the initial highway search, Trooper Bardsley discovered what appeared to be alterations in the vehicle that lead him to believe that there was a hidden compartment in the vehicle.

Defendant does not dispute that the initial stop was justified. Thus, the issue here is whether the resulting detention was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). For a detention to be reasonable, an officer's questions must relate to the purpose of the stop. *United States v. Barahona,* 990 F.2d 412, 416 (8th Cir. 1993). When conducting a routine traffic stop, an officer may check the driver's identification and vehicle registration, ask the driver to step out of the vehicle and to the patrol car, and inquire into the driver's destination and purpose for the trip. *United States v. Gregory,* 302 F.3d 805, 809 (8th Cir.2002). This investigation need not be limited to the driver. *Id.* The officer may undertake similar questioning of the vehicle's occupants to verify the information provided by the driver. *Id.* Moreover, if the responses of the detainees and the circumstances surrounding the stop give rise to suspicions unrelated to the underlying stop, an officer may broaden his inquiry and satisfy those suspicions. *Barahona,* 990 F.2d at 416.

Defendant cites *United States v. Ramos,* 20 F.3d 348 (8th Cir.1994) *reh'g granted United States v. Ramos II,* 42 F.3d 1160 (8th Cir.1994), in support of his argument that Trooper Bardsley unlawfully expanded the scope of the search by separately questioning both defendant and his passenger, Ms. Sandoval. In *Ramos,* however, the Eighth Circuit determined that the detainees' answered the trooper's questions about their destination consistently. *Ramos,* 42 F.3d at 1163. The facts in *Ramos* are in sharp contrast to the facts currently before the Court. In this case, Trooper Bardsley was permitted to ask defendant for his driver's identification and vehicle registration, as well as request that defendant accompany him to the patrol car while he ran a background check.

*See Gregory,* 302 F.3d at 809 (defining proper inquiry by officer of detainees under the Fourth Amendment). Trooper Bardsley was also permitted to question defendant and Ms. Sandoval about their destination and the purpose of their trip. *Id.* Upon questioning, defendant and Ms. Sandoval gave conflicting stories regarding who they were going to see in Chicago and the purpose of their trip. Defendant claimed that they were going to stay with Ms. Sandoval's parents in Chicago and announce their engagement. Ms. Sandoval stated that her parents lived near Los Angeles, California and that they were going to stay with her aunt in Chicago and visit her family for no special reason.

Trooper Bardsley's initial questioning of defendant was limited to a valid line of inquiry recognized by the Eighth Circuit, *see Gregory,* 302 F.3d at 809, and did not materially extend the length or scope of the traffic stop. The conflicting responses given by defendant and Ms. Sandoval gave Trooper Bardsley justification for a greater intrusion unrelated to the traffic stop. *See Gregory,* 302 F.3d at 809 (expansion of investigation permitted where driver said they departed from Las Vegas to Little Rock for a week and passenger said they left from Los Angeles and would return in a couple days). The totality of circumstances known to Trooper Bardsley met the requisite level of reasonable suspicion under *Terry* and entitled him to continue to detain defendant for a reasonable amount of time to satisfy his suspicions. *See Barahona,* 990 F.2d at 416. In this case, defendant consented to the search of his vehicle within several minutes of Trooper Bardsley hearing the conflicting stories. Under these circumstances, Trooper Bardsley did not unreasonably expand the scope of his investigation and, thus, defendant was not being unlawfully detained when he consented to the search of his vehicle.

B. Whether Defendant's Consent Was Invalid

 Defendant also contends that his consent was invalid because nothing intervened to breach the causal connection between the allegedly illegal detention and his consent. As indicated by defendant, to meet its burden of proof the government must demonstrate both (1) that the consent was voluntary and (2) that there was a break in the causal connection between any illegal detention and the defendant's consent. *United States v. McSwain*, 29 F.3d 558 (10th Cir.1994). Defendant does not argue that defendant's consent was invalid; nor does the Court find anything in the record that would indicate invalidity of the consent that was initially given or of the consent to the expanded search that resulted in the removal of defendant's vehicle to the Iowa State Patrol post where the cocaine was discovered. Instead, defendant appears to base his motion with regards the issue of consent solely on the second prong of this test. *See* Defendant's Supplemental Memorandum at 3 ("[T]he issue is whether the illegal detention was purged by defendant's consent.").

As detailed above, however, the Court has found that defendant was not being unlawfully detained when he consented to the search of his vehicle. Thus, defendant's argument with regard to this issue is unpersuasive.

## III. CONCLUSION

For the foregoing reasons, defendant's motion to suppress is DENIED.

IT IS SO ORDERED.