# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4022

_____

Rogina Moen Ribbey, Administrator     *
of the estate of Charles Ribbey,     *
    *
        Appellee,     *
    *
      v.     * Appeal from the United States
    * District Court for the
Gregory A. Cox,     * Southern District of Iowa.
    *
        Appellant.     *
    *
State of Iowa,     *
    *
        Defendant.     *

_____

Submitted: May 12, 2000
Filed: August 31, 2000

_____

Before BOWMAN and LOKEN, Circuit Judges, and BATAILLON,[1] District Judge.

_____

BOWMAN, Circuit Judge.

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

Gregory A. Cox, a former trooper with the Iowa State Patrol, appeals from the District Court's[2] order denying his motion for summary judgment on the basis of qualified immunity in this 42 U.S.C. § 1983 action. We affirm.

## I.

In the early morning hours of January 14, 1997, Cox and other police officers were involved in a high speed chase of a Chevrolet Blazer. After some time, the Blazer hit a chain link fence at the end of a vacant lot and came to a stop. Officers surrounded the Blazer, and Trooper Ken Clary approached the passenger side, where Charles Ribbey, the plaintiff's decedent, was sitting. Clary attempted both to break the passenger window and to open the passenger door, but was unsuccessful. Cox then approached the passenger side with his gun drawn and, as Clary moved toward the driver side, Cox used his flashlight to break the passenger window. Shortly after Cox broke the window, he shot Ribbey in the back. Ribbey died from the wound.

In his affidavit in support of his motion for summary judgment, Cox explained that he told Ribbey to raise his hands after he broke the window. Ribbey raised his hands and made eye contact with Cox. Cox then saw Ribbey shift his eyes to his left, drop his hands, twist his body to his left, and reach to the floor in the area between his legs and the console in the middle of the Blazer. Thinking that Ribbey could have been reaching for a weapon, Cox felt that he had to shoot Ribbey to protect himself and the other officers surrounding the car. Plaintiff, however, pointed to the fact that no weapons were found in the Blazer. In addition, plaintiff contended that Ribbey's movement to the left was a reaction to the breaking of the passenger window.

---

[2]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

The following exhibits, among others, were before the District Court when it ruled on the motion for summary judgment: (1) a videotape of the chase and shooting taken from Trooper Clary's patrol car, in which it is difficult to see the movements of Ribbey inside the Blazer; (2) the autopsy report for Ribbey, which describes a gunshot wound in the middle right portion of the back tracking from right to left and slightly upward; (3) the affidavit of Christopher Meister, a passenger in the back of the Blazer, who saw Ribbey lean over to the driver's seat after the glass was broken; and (4) the deposition of Clary, who testified that he did not see the need for deadly force from his point of view. Clary, however, neither saw nor heard Cox fire the shot, nor did he observe Ribbey's actions in the moment immediately preceding the shot.

II.

In denying the motion for summary judgment based on qualified immunity, the District Court stated:

> Cox contends Ribbey moved his hand, as though reaching for a dangerous weapon, giving Cox justification for shooting Ribbey. Cox testified in his deposition that after Ribbey complied with Cox's command to raise his hands, Ribbey moved his hand to the console of the vehicle in violation of that command. Defendants contend no facts support the plaintiff's theory that Ribbey's movement may have been a reflex resulting from glass breaking in on him.
>
> A videotape shows the chase and shows Cox approaching the vehicle. But the videotape does not plainly show just what happened during the critical time just before Cox shot Ribbey. What happened is a genuine fact question, making it necessary to have a trial, in this case a bench trial. If the court finds that Cox's use of deadly force against Ribbey was justified, the defendants would not be held liable for damages. This summary judgment record does not eliminate genuine issues of fact on which the court, in a bench trial, may determine whether plaintiff is able to prove her pleaded claims.
>
> . . . .

The court is not finally deciding whether plaintiff or defendants will probably prevail on the issue of qualified immunity. The court assesses credibility in a trial and does not assess credibility on a summary judgment record like this. On the summary judgment record here, the court is unable to find that Ribbey posed an imminent threat to Trooper Cox or other officers at the scene. Ribbey was sitting in the front seat of the vehicle after it came to rest. Several law enforcement officers were in the vicinity of the stopped vehicle. Defendants are not entitled to summary judgment on the qualified immunity defense.

Ribbey v. Cox, No. 4-99-CV-80008, at 1-4 (S.D. Iowa Oct. 5, 1999) (citations omitted and emphasis added).

The District Court's opinion juxtaposes two versions of the critical time immediately proceeding the shooting: Cox's version and the plaintiff's version. According to Cox's version, Cox broke the window and ordered Ribbey to raise his hands. Ribbey raised his hands and made eye contact, but then lowered his hands, turned to the left, and reached to the console. The plaintiff's version is that Ribbey turned to the left as a reflex to protect himself from the breaking glass. Cox argues that plaintiff came forward with no evidence to support that version of the events. Nevertheless, having carefully read the District Court's opinion in conjunction with the summary judgment record,[3] we believe the District Court likely assumed the plaintiff's version of the facts in denying Cox's motion for qualified immunity.

_____

[3] The District Court reached its conclusion that "what happened is a genuine fact question" immediately after discussing the videotape. After "undertak[ing] a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed," Johnson v. Jones, 515 U.S. 304, 319 (1995) we believe the District Court may have found support for the plaintiff's version in the videotape, which, although difficult to make out, seems to show only a very short interval between the time Cox broke the glass and the time he shot Ribbey.

The question that we must answer, then, is whether a genuine question of material fact exists regarding whether Cox's actions—as defined by the plaintiff's version of the events—were objectively reasonable. Our review is de novo. A shooting is objectively reasonable when "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical harm to the officer or others." Tennessee v. Gardner, 471 U.S. 1, 3 (1985). But "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396-97 (1989). And we must remember "not to indulge in armchair quarterbacking or exploit the benefits of hindsight when evaluating police officers' use of deadly force." Gardner v. Buerger, 82 F.3d 248, 251 (8th Cir. 1996).

Having carefully considered this question, we believe that a genuine question of fact exists regarding whether Cox had probable cause to believe that Ribbey, who we assume (for purposes of this opinion only) was turning reflexively down and away from the breaking window, was reaching for a weapon, and thus posed a significant threat of death or serious physical harm to the officer or others. In so doing, we note that this case is readily distinguishable from cases in which the officer actually observed the decedent with a weapon. See, e.g., Mettler v. Whitledge, 165 F.3d 1197 (8th Cir. 1999) (holding officers were entitled to qualified immunity where decedent, hiding in dark garage, shot police dog, and officers at door of garage a short distance away returned fire). Instead, this case is in many respects similar to Gardner, in which the officer, who admitted that the decedent never had or brandished a weapon, was afraid that the decedent was attempting to reach one. See Gardner, 82 F.3d at 250. In that case, we concluded that the evidence permitted (but did not require) the jury "to draw the not extraordinary inference[,] from uncontradicted testimony that an unarmed man was shot in the back of the head[,] . . . that the shooting was unreasonable." Id. at 253. As we did in Gardner, we note that in the present case a conclusion that the shooting

was unreasonable is "not the only possible one." Id. Nevertheless, in order to defeat a motion for qualified immunity, it need only be permissible for a reasonable finder of fact based on the evidence and on the finder of fact's assessment of witness credibility to conclude that the shooting was objectively unreasonable.

Accordingly, for the reasons stated above, we affirm the judgment of the District Court and remand for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.