# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1800
_____

Norma Seiner; Charles Seiner,        *
                                   *
          Appellants,       *   Appeal from the United States
                                   *   District Court for the Western
   v.                           *   District of Missouri.
                                   *
Christopher Drenon,           *
                                   *
          Appellee.        *

_____

Submitted:   September 13, 2002

Filed: September 23, 2002
_____

Before BOWMAN, BRIGHT, and FAGG, Circuit Judges.
_____

FAGG, Circuit Judge.

Officers Christopher Drenon, Hugh Fowler, and Max Blanchard went to Roger Seiner's home with a warrant to arrest him for a felony. The officers were informed Seiner was known to be violent and armed with a knife. Seiner's father told the officers Seiner was hiding in the cellar and did not have a weapon. After Seiner did not respond to the officers' requests to come out, the officers went into the dimly lit cellar with guns drawn. The officers saw Seiner hiding between a hot water heater and a brick column. Drenon repeatedly ordered Seiner to show his hands, but Seiner did not respond. Drenon slowly approached Seiner until he was touching him with his handgun. Fowler yelled that Seiner had something in his hands. The officers

ordered Seiner to "drop it," but Seiner did not do so. Unbeknownst to Drenon, Fowler then decided to use his extendable baton to strike Seiner's hands, which were in the narrow four-inch opening between the brick column and the water heater, to force Seiner to drop whatever he was holding. At the time, Fowler was holding a flashlight in his left hand and his gun in his right hand. As Fowler attempted to shift his equipment and pull the baton from his belt with his right hand, his gun discharged. The bullet from Fowler's weapon struck the brick column and bullet fragments ricocheted into Drenon, striking him in the face. At the time, Drenon was facing Seiner, not Fowler. Assuming Seiner had shot him, Drenon immediately fired three shots into Seiner, killing him. Drenon then called, "I'm hit . . . he shot me, Hugh." Fowler replied, "No, Chip, I shot you."

Seiner's parents, Norma and Charles Seiner,[*] sued Drenon alleging excessive force in violation of 42 U.S.C. § 1983 and Missouri state law claims of battery, assault, and excessive force. The district court[**] granted summary judgment to Drenon. The court held Drenon was entitled to qualified immunity on the § 1983 claim because no rational jury could find Drenon's actions were objectively unreasonable under the circumstances. The court held Drenon was entitled to summary judgment on the state law claims because he was acting in a discretionary capacity and thus was immune under the official immunity doctrine. Seiner's mother appeals, and we affirm.

We review the grant of summary judgment based on qualified immunity de novo. Wilson v. City of Des Moines, 293 F.3d 447, 449 (8th Cir. 2002). When considering the qualified immunity issue, we must first decide whether, viewed in the light most favorable to Seiner's mother, the facts alleged show Drenon's conduct

---

[*]Charles Seiner passed away after the lawsuit was filed.

[**]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). Claims that law enforcement officers have used excessive force during an arrest or other seizure are analyzed under the Fourth Amendment and its "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989). To decide whether a particular use of force is objectively reasonable, courts examine the facts and circumstances of each case, including the crime's severity, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect actively resists arrest or flees. Id. at 396. We consider only whether the seizure itself, here, the shooting, and not preseizure conduct, was unreasonable. Gardner v. Buerger, 82 F.3d 248, 254 (8th Cir. 1996). "A shooting is objectively reasonable when 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical harm to the officer or others.'" Ribbey v. Cox, 222 F.3d 1040, 1043 (8th Cir. 2000) (quoting Tennessee v. Garner, 471 U.S. 1, 3 (1985)). "[A] mistaken understanding of the facts that is reasonable in the circumstances can render a seizure based on that understanding reasonable under the Fourth Amendment." Milstead v. Kibler, 243 F.3d 157, 165 (4th Cir.), cert. denied, 122 S. Ct. 199 (2001).

Having examined the record in the light most favorable to Seiner's mother, we hold she has not made out a constitutional violation. There is no dispute that at the time Drenon fired his three shots, he believed Seiner had shot him. Although Drenon's belief was mistaken, the mistaken belief was reasonable. Seiner's mother contends there is a genuine issue of material fact about whether Drenon's actions were reasonable because Drenon's deposition testimony shows the situation in the cellar was not "tense, uncertain, and escalating," Drenon did not see Seiner with a gun, Drenon had police training to prevent him from firing his gun in exciting or distracting situations, and Drenon just reacted. Regardless of these facts, however, Drenon had been shot and an objective officer in Drenon's place would reasonably believe Seiner had done it. Drenon did not see Seiner holding a gun, but Drenon could not see Seiner's left arm and Fowler said Seiner was holding something. Seiner

was known to be armed and dangerous, and Drenon was facing Seiner when he was shot in the face. Because Drenon's mistaken belief that Seiner had shot him was objectively reasonable, it was objectively reasonable for Drenon to shoot Seiner.

Seiner's mother also asserts the district court erroneously granted summary judgment to Drenon on her state law claims. She contends Drenon is not immune under the official immunity doctrine because the doctrine only applies to negligence claims, not to wrongful death claims. "The official immunity doctrine provides that public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." DaVee v. Mathis, 812 S.W.2d 816, 827 (Mo. Ct. App. 1991). Contrary to Seiner's mother's contention, the doctrine applies to wrongful death cases. See Miller v. Smith, 921 S.W.2d 39, 44-45 (Mo. Ct. App. 1996). Further, an officer is performing a discretionary rather than a ministerial act, and thus is protected by official immunity, when he executes a warrant, draws and fires a weapon, Bachmann v. Welby, 860 S.W.2d 31, 33 (Mo. Ct. App. 1993), or draws and points a weapon at a suspect, Miller, 921 S.W.2d at 46. We conclude official immunity protects Drenon from state tort liability under state law for the shooting.

In sum, because there is no genuine issue of material fact about whether a reasonable officer in Drenon's position could have believed the shooting was lawful, Drenon is qualifiedly immune from liability on the § 1983 claim. Official immunity protects Drenon from state tort liability on the remaining claims. We thus affirm the district court's grant of summary judgment to Drenon.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-