# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3519

_____

Sybil Hernandez, Mother and                 *
Administrator of the Estate of              *
Albert James Six Feathers,                  *
                                            *
    Plaintiff - Appellee,              *
                                            *
    v.                                 *
                                            *
Brett Jarman, Individually,                 *   Appeals from the United States
                                            *   District Court for the
    Defendant - Appellant,             *   District of South Dakota.
                                            *
State of South Dakota; Edgemont             *
Police Department; Mary Kellogg,            *
Individually and in her Official            *
Capacity as a City Council                  *
Commissioner; Roger Le Vasseur,             *
Individually and in his Official            *
Capacity as a City Council                  *
Commissioner; William Clark,                *
Individually and in his Official            *
Capacity as a City Council                  *
Commissioner; Alex Asbridge,                *
Individually and in his Official            *
Capacity as a City Council                  *
Commissoner; L. George West,                *
Individually and in his Official            *
Capacity as a City Council                  *
Commissioner; Ted W. Hinesley,              *
Individually and in his Official            *
Capacity as Edgemont City Attorney;         *

City of Edgemont; Jeffrey D. Tarrell,                    *
Individually; Martha Jarman,                             *
Individually and in her Official                         *
Capacity as a Deputy with the Fall                       *
River County Sheriff's Department;                       *
Fall River County Sheriff's                              *
Department; Fall River County,                           *
South Dakota; Robert Fazendin,                           *
Individually and in his Official                         *
Capacity as a Law Enforcement                            *
Officer with the Newcastle Police                        *
Department; Newcastle Police                             *
Department; City of Newcastle,                           *
Wyoming; John Does 1 through 5,                          *
                                                         *
                    Defendants.                          *

_____

No. 02-3520

_____

Sybil Hernandez, Mother and                              *
Administrator of the Estate of                           *
Albert James Six Feathers,                               *
                                                         *
                    Plaintiff - Appellee,                *
                                                         *
          v.                                             *
                                                         *
Brett Jarman, Individually; State of                     *
South Dakota; Edgemont Police                            *
Department; Mary Kellogg,                                *
Individually and in her Official                         *
Capacity as a City Council                               *
Commissoner; Roger Le Vasseur,                           *
Individually and in his Official                         *

Capacity as a City Council                    *
Commissioner; William Clark,                   *
Individually and in his Official               *
Capacity as a City Council                     *
Commissioner; Alex Asbridge,                   *
Individually and in his Official               *
Capacity as a City Council                     *
Commissioner; L. George West,                  *
Individually and in his Official               *
Capacity as a City Council                     *
Commissioner; Ted W. Hinesley,                 *
Individually and in his Official               *
Capacity as Edgemont City Attorney;            *
City of Edgemont,                              *
                                               *
    Defendants,             *
                                               *
Jeffrey D. Tarrell, Individually,              *
                                               *
    Defendant - Appellant,  *
                                               *
Martha Jarman, Individually and in             *
her Official Capacity as a Deputy with         *
the Fall River County Sheriff's                *
Department; Fall River County                  *
Sheriff's Department; Fall River               *
County, South Dakota; Robert                   *
Fazendin, Individually and in his              *
Official Capacity as a Law                     *
Enforcement Officer with the                   *
Newcastle Police Department;                   *
Newcastle Police Department; City of           *
Newcastle, Wyoming; John Does                  *
1 through 5,                                    *
                                               *
    Defendants.             *

_____

Submitted: May 15, 2003

Filed: August 21, 2003

_____

Before BOWMAN and BYE, Circuit Judges, and ERICKSEN,[1] District Judge.

_____

BOWMAN, Circuit Judge.

Jeffrey D. Tarrell, Sheriff of Fall River County, South Dakota, and Brett Jarman, Chief of Police of Edgemont, South Dakota (collectively "the officers"), appeal the District Court's denial of their motions for summary judgment on the basis of qualified immunity[2] in a 42 U.S.C. § 1983 (2000) suit for damages filed against them by Sybil Hernandez, the administrator of the estate of her son, Albert James Six Feathers. We reverse.

I.

This suit arose out of a high-speed police chase through parts of Wyoming and South Dakota that ended with the fatal shooting of Six Feathers by Brett Jarman. At around 3:00 a.m. on December 10, 1999, in New Castle, Wyoming, Six Feathers was observed driving erratically by Robert Fazendin, a New Castle police officer. Because Fazendin suspected Six Feathers was intoxicated, he attempted to stop Six

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

[2]This interlocutory appeal is properly before us because Tarrell and Jarman are appealing the denial of summary judgment motions in which each asserted a qualified immunity defense. See McCaslin v. Wilkins, 183 F.3d 775, 778 (8th Cir. 1999).

Feathers by turning on his overhead lights. In response, Six Feathers sped up and fled south on Highway 85. Fazendin pursued Six Feathers for forty-five miles at speeds reaching one hundred miles per hour. When it became apparent that Six Feathers was heading to South Dakota, Fazendin told his dispatcher to contact South Dakota law enforcement officials to notify them of the pursuit, and to request that a set of road spikes be deployed to stop Six Feathers's vehicle. This message was relayed to Tarrell, Brett Jarman, and Martha Jarman, a deputy with the Fall River County Sheriff's Department. Brett Jarman and Martha Jarman, each in his and her respective patrol car, joined the pursuit near Edgemont. Shortly thereafter, Tarrell joined the chase. A South Dakota Highway Patrol airplane flown by Glen Miller monitored the pursuit.

Around Edgemont, Six Feathers successfully evaded several roadblocks, including a rolling roadblock in which the officers attempted to box Six Feathers's car in on three sides. During this attempted stop of Six Feathers, Brett Jarman's car apparently became disabled, and he ended up riding with Tarrell. At approximately this same time, Fazendin, who was now out of his jurisdiction, stopped his pursuit, but he continued to follow the chase until he could determine his location. Martha Jarman also fell behind when her car spun out after it collided with Six Feathers's vehicle. Tarrell and Brett Jarman continued the high-speed chase with Martha Jarman and Fazendin following some distance behind.

Near Ardmore, South Dakota, Six Feathers turned his car at a section line road and then off the road and down a hill into a pasture. Due to the rough nature of the terrain and warnings from Miller, Tarrell slowed down. Six Feathers continued ahead for a short distance but then turned his vehicle around and came back on the same path in the opposite direction. After seeing Six Feathers turn his car around, Brett Jarman told Tarrell to stop his car. As Tarrell slowed down, Brett Jarman grabbed Tarrell's shotgun and jumped out of the patrol car. Within seconds after Brett Jarman's exit, Six Feathers ran head-on into Tarrell's vehicle. Brett Jarman fired four

-5-

shots at Six Feathers, but, as the District Court noted, it is unclear whether the shots were fired "before, during, or after the collision." Mem. Op. and Order at 5 (July 31, 2002). Six Feathers died at the scene.

The District Court denied the summary judgment motions of Brett Jarman and Tarrell.[3] Subsequently, based on the motions of Tarrell and Brett Jarman, the District Court issued an order of clarification because it believed its prior order did not adequately discuss the reasons for denying Tarrell and Jarman qualified immunity. See Mem. of Clarification at 2 (Oct. 7, 2002).

II.

We review a district court's denial of summary judgment on the basis of qualified immunity de novo. McCaslin v. Wilkins, 183 F.3d 775, 778 (8th Cir. 1999). In so doing, we consider whether, viewed in the light most favorable to the nonmoving party, the facts alleged show a violation of a clearly established constitutional right. Seiner v. Drenon, 304 F.3d 810, 812 (8th Cir. 2002).

In this case, if Hernandez's allegations fail to establish a violation of a clearly established constitutional right, Jarman and Tarrell will be entitled to qualified immunity for their actions. See Saucier v. Katz, 533 U.S. 194, 201 (2001) (holding that in excessive force cases, the threshold question for the court is whether the officer's conduct violated a clearly established constitutional right). We analyze Hernandez's claims that the officers used excessive force during their seizure of Six Feathers "under the Fourth Amendment and its 'objective reasonableness' standard." Seiner, 304 F.3d at 812; Cole v. Bone, 993 F.2d 1328, 1332–33 (8th Cir. 1993)

---

[3]The District Court granted summary judgment in favor of Martha Jarman, Fazendin, and several other defendants not involved in this appeal. Mem. Op. and Order at 15–16.

(holding a Fourth Amendment seizure occurs when an officer fatally shoots a fleeing suspect). In determining whether this use of force in seizing Six Feathers was objectively reasonable, we consider the facts and circumstances of the case, including the crime's severity, whether Six Feathers posed an immediate threat to the safety of the officers or others, and whether he actively resisted arrest or fled. See Seiner, 304 F.3d at 812. Moreover, in making this determination, we consider only whether the seizure itself, not preseizure conduct, was unreasonable. Id.

An officer may use deadly force if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Id. (quoting Tennessee v. Garner, 471 U.S. 1, 3 (1985)); see also Sinclair v. City of Des Moines, Iowa, 268 F.3d 594, 596 (8th Cir. 2001). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. This "'reasonableness' inquiry" concerns only whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force . . . ." Id. at 397 (internal citation omitted).

As we have repeatedly held, in opposing a motion for summary judgment, a nonmoving party may not rely on mere denials or allegations in its pleadings, but must designate specific facts showing that there is a genuine issue for trial. See, e.g., Brandt v. Davis, 191 F.3d 887, 891 (8th Cir. 1999) (affirming grant of summary judgment in favor of defendants in an excessive force case because plaintiff failed to submit any evidence contradicting defendants' version of the incident). While we are mindful that this case is somewhat unusual in that Tarrell and Jarman are the only surviving witnesses, that does not relieve Hernandez of her burden of showing that material facts are in dispute.

We turn first to consider whether the District Court erred in denying Tarrell's motion for summary judgment on the basis of qualified immunity. The District Court denied Tarrell's motion because it believed the record indicated that "Tarrell was potentially a direct participant in the seizure of Six Feathers" and that "material questions of fact exist relating to Tarrell's knowledge of Jarman's intentions" and whether Tarrell authorized the use of deadly force by Jarman. Mem. of Clarification at 4. In particular, the District Court found that Tarrell may have been involved in the seizure of Six Feathers because of Six Feathers's collision with Tarrell's vehicle and because Jarman shot Six Feathers with Tarrell's shotgun.

We reject the District Court's conclusion that the collision between Six Feathers's car and Tarrell's car could establish Tarrell's participation in the seizure of Six Feathers. The Supreme Court has held that a Fourth Amendment seizure does not occur where a "'pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit,' but accidentally stopped the suspect by crashing into him." County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) (quoting Brower v. County of Inyo, 489 U.S. 593, 597 (1989)). In this case, unlike in Lewis, Six Feathers *intentionally* caused the collision by driving his car head-on into Tarrell's car. Hernandez does not offer any evidence to dispute this claim. Instead, she speculates about what might have caused this collision, including the possibility that Six Feathers felt trapped. See Br. of Appellee at 17. For purposes of whether a Fourth Amendment seizure occurred during this collision, it is irrelevant what Six Feathers might have been thinking (although we find nothing remarkable about the proposition that the Six Feathers may have felt trapped; after all, Tarrell and Jarman were attempting to end this highly dangerous and lengthy pursuit). As we have held, a Fourth Amendment seizure occurs as a result of a car collision only where the police officer intended the collision to be the result. Roach v. City of Fredericktown, Mo., 882 F.2d 294, 296 (8th Cir. 1989). Tarrell's undisputed testimony was that he attempted to avoid the collision by backing up. See Dep. of Jeffrey Tarrell at 147. In addition, an aerial photograph of the scene shows

that Six Feathers actually drove a short distance away after the collision. Based on these facts, we find, as a matter of law, that no seizure occurred from Six Feathers's collision with Tarrell's vehicle and therefore there is no basis for denying Tarrell qualified immunity on this ground.

We also conclude that Tarrell did not deprive Six Feathers of any clearly established constitutional right when Jarman fatally shot Six Feathers with Tarrell's shotgun. Again, the undisputed testimony of Tarrell was that he did not see Jarman handle the shotgun during the pursuit and that Tarrell had no idea what Jarman was going to do when he told Tarrell to stop his car. Id. at 97, 121. The shooting of Six Feathers by Jarman happened as Six Feathers was crashing head-on into Tarrell's car as Tarrell attempted to avoid the collision. Id. at 148. There is simply no evidence in the record to support the District Court's finding that questions of fact exist as to whether Tarrell knew of or authorized Jarman's use of deadly force to seize Six Feathers.

With respect to Brett Jarman, the District Court denied his motion for summary judgment because it found that "[w]hile the use of deadly force may have been justified, genuine questions of material fact concerning what actually took place in the pasture area remain." Mem. of Clarification at 5. Specifically, the District Court thought that the disputed facts included Six Feathers's ability to operate his car after the collision with Tarrell's vehicle, Six Feathers's intentions after the collision, and the sequence of the four shots fired by Jarman. Id.

As we have stated, Jarman's use of deadly force is permissible if he had probable cause to believe that Six Feathers posed a significant threat of death or serious physical injury to Jarman, Tarrell, or others. See Seiner, 304 F.3d at 812. We view the reasonableness of Jarman's use of deadly force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See Graham, 490 U.S. at 396.

The undisputed facts in this case demonstrate that Six Feathers continually eluded the officers and took them on a lengthy and highly dangerous chase. Near the end of the pursuit, Six Feathers intentionally drove his car directly into Tarrell's vehicle. Jarman testified that it was his belief that Six Feathers was an "immediate threat." Dep. of Brett Jarman at 178. Jarman further testified that, after the collision, he believed Six Feathers, as he was backing up and turning his car in Jarman's direction, intended to run him over. Id. at 179. Based on these undisputed facts, we hold that Jarman's use of deadly force was objectively reasonable under the circumstances as Jarman knew them to be at that time. See Cole, 993 F.3d at 1333 (holding officer's decision to use deadly force to stop truck driver was not objectively unreasonable because officer believed driver posed an imminent threat of serious physical harm to the officers in the pursuit as well as other innocent motorists).

In denying Jarman's motion, the District Court stated that there was a dispute about whether Six Feathers was able to continue to operate the vehicle after the collision with Tarrell's car. As noted, however, the record demonstrates that Six Feathers continued to drive his car after the collision. In addition, the District Court denied summary judgment for Jarman because it found that factual disputes existed as to Six Feathers's "intentions" after the collision. The District Court erred in denying Jarman's motion for qualified immunity on this ground. The reasonableness of Jarman's use of deadly force is judged from the perspective of a reasonable officer on the scene, see Graham, 490 U.S. at 397, and not from the unknowable intentions of the victim. In short, Six Feathers's actual intent is irrelevant. Instead, our inquiry concerns what a reasonable officer could conclude Six Feathers's intentions were at that moment. Jarman testified that he believed Six Feathers intended to run him over with his car. Given that Jarman had just witnessed Six Feathers ram Tarrell's car with his vehicle, we conclude it was reasonable for Jarman to believe that the use of deadly force was necessary to protect Tarrell and himself from harm. See Saucier, 533 U.S. at 205 (noting that "[i]f an officer reasonably, but mistakenly, believed that a suspect

-10-

was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed").

Finally, the District Court denied Jarman's motion because it found there was an alleged dispute about the sequence of shots fired. According to Jarman, he fired two shots at Six Feathers as Six Feathers drove into Tarrell's vehicle and another two shots as Six Feathers backed up and started to drive towards him. See Dep. of Brett Jarman at 178–180. Even if we were to accept that there are discrepancies in the accounts of Jarman, Tarrell, and the version of the shooting Jarman gave to Fazendin when he arrived on the scene, we do not think that is relevant to the inquiry at hand, which is whether Jarman's use of deadly force was objectively reasonable under the circumstances as Jarman perceived them. Even if we assumed, as Hernandez implies, that Jarman fired all four shots after Six Feathers collided with Tarrell's vehicle, see Br. of Appellee at 25, we would still conclude that Jarman's conduct was objectively reasonable because he had probable cause to believe Six Feathers posed an imminent threat of serious physical harm to himself and to others as evidenced by Six Feathers driving head-on into Tarrell's vehicle. See Garner, 471 U.S. at 11 (noting that "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction of serious physical harm, deadly force may be used if necessary to prevent escape"). Accordingly, Jarman is entitled to qualified immunity for his conduct because the facts as alleged by Hernandez fail to state a violation of Six Feathers's clearly established constitutional rights.

## III.

For the reasons stated, we reverse the judgment of the District Court denying qualified immunity to Tarrell and to Brett Jarman.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.